# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1037

_____

Eddy Clark,                                        *
                                                   *
    Plaintiff-Appellant,                         *
                                                   *   Appeal from the United States
          v.                                   *   District Court for the
                                                   *   Eastern District of Missouri.
Matthews International Corporation,                 *
                                                   *
    Defendant-Appellee.                          *

_____

Submitted: September 20, 2010
Filed:   December 27, 2010

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Matthews International Corporation ("Matthews") terminated Eddy Clark in January 2007. Alleging that he was terminated and suffered other adverse employment actions due to his age, Clark sued Matthews under the Age Discrimination in Employment Act ("ADEA") and the Missouri Human Rights Act ("MHRA"). The district court granted summary judgment in favor of Matthews, and Clark appealed. We affirm in part and reverse in part.

## I. Background

Matthews is a Pennsylvania corporation whose Graphics Division offers graphic-design services to commercial vendors. The Graphics Division has facilities

across the United States, including one in St. Louis. The St. Louis Graphics Division hired Eddy Clark, who was age forty-three at the time, to work as an artist in 1992. Clark was hired to design corrugated-cardboard packaging as a member of the St. Louis Graphics Division's Art Department.[1]

Corrugated-packaging design was the primary service that the St. Louis Graphics Division offered its clients when it hired Clark. By 2000, however, the market for corrugated-packaging design had become increasingly competitive. As a result, not only was Matthews's share of the corrugated-packaging-design market shrinking, but the profit margin for corrugated-packaging design was shrinking as well. Thus, Matthews sought to diversify its packaging-design services at the St. Louis Graphics Division. Specifically, although it had no plans of abandoning its design of corrugated packaging at that time, Matthews wanted to begin designing primary packaging at its St. Louis facility.

Primary packaging is substantially different from corrugated packaging. Primary packaging is the packaging that firms use to enclose their products; as a result, it is the packaging that consumers actually see. Primary packaging consists of the colorful labels and packages that are intended to catch a consumer's eye as they browse products in a retail store. Corrugated packaging, on the other hand, consists of the cardboard boxes that products are shipped and stored in.

In 2000, to spur development of its primary-packaging-design services at the St. Louis facility, Matthews hired a person with primary-packaging-design experience, Randall Peek, to be a manager within the site's Art Department and to oversee the nine artists who designed packaging. Peek formally divided the artists into three teams—Blue, Red, and Purple—with three artists per team. The Blue Team designed

_____

[1] The Art Department is just one of the departments within the St. Louis Graphics Division. Other departments include the Customer Service, Plate Making, Mounting, and Shipping departments.

basic one- and two-color corrugated packaging, the Red Team designed intermediate-level corrugated packaging, and the Purple Team designed multi-color primary packaging.

According to Peek, he formed the teams based upon the artists' previous work experiences. Peek placed the three artists who had already been designing primary packaging on the Purple Team. Peek selected Clark, age fifty-one at the time, for the Blue team. Although Clark had twenty-five years of experience in designing magazine advertisements, promotional brochures, flyers, catalogs, and corrugated packaging, Clark did not have the type of experience and training in primary packaging that the three Purple Team members had. After the division, the ages of the Purple Team members (27, 28, 37) were relatively lower than the ages of the members of the Red Team (31, 43, 50) and the Blue Team (35, 51, 54).

After the initial division in 2000, artists generally designed either corrugated or primary packaging exclusively. This is because, according to Peek, designing primary packaging requires different experience, training, and natural ability than designing corrugated packaging. During his deposition, Peek described the difference between designing these forms of packaging as similar to the difference between "drawing a cartoon and doing a Picasso." As a consequence, primary-packaging designers generally need to use different computers and software than corrugated-packaging designers. Clark asked to join the Purple Team in 2005, but Peek did not feel Clark was sufficiently skilled to design primary-packaging.

Peek claims his reluctance to place Clark on the Purple Team was due in part to Clark's performance reviews. From 2000 onward, the St. Louis Graphics Division consistently tried to increase its sales-per-employee ratio. As a result, artists were required to produce better work at a quicker pace. However, Clark's performance reviews indicate he was unable to keep up with these rising expectations. In 2002, Clark's review indicates he was not meeting the company's standards for volume of

work produced, that he needed to improve his work on VIP orders, and that he needed to reduce his number of errors. A 2004 review indicates that Peek told Clark that he would issue him a written warning if he did not begin working more quickly while committing fewer errors. Although Clark's review improved slightly in 2005, his review in 2006 again indicates that he was not meeting the company's productivity standards.

Matthews also tried to boost its sales-per-employee ratio at the St. Louis Graphics Division by routinely conducting reductions-in-force ("RIF"). The terminations for the RIF relevant to this case occurred from August 18, 2006, through January 31, 2007. Prior to the RIF, Matthews officials determined how many employees needed to be cut at the St. Louis Graphics Division. Then, Peek[2] and Matthews's Vice-President of Operations, Kerry Beaver, claimed that they compiled a list of employees who should be cut at the St. Louis facility based upon the fit between their skills and the future work to be performed with a reduced staff. They then sent this list to the Regional Human Resources Manager, who claimed she reviewed the list to compare those selected for the RIF with those who were not selected to ensure terminations were based upon job performance.

Clark, age fifty-seven at the time, was selected for the RIF and terminated on January 31, 2007. According to Peek, Clark was chosen, at least in part, because he did not have the skills for primary-packaging design, which had a greater profit margin than corrugated-packaging design. Additionally, Peek claimed Clark's performance reviews indicating poor productivity contributed to his termination.

For a number of reasons, however, Clark believes his selection for the RIF was due to his age, not his abilities. First, fourteen of the fifteen employees terminated

---

[2] By the time of the RIF terminations, Peek had been promoted to Production Manager at the St. Louis facility.

from August 18, 2006, to January 31, 2007, were over the age of forty. Second, Clark alleges that, shortly before his termination, Peek asked him and another employee if they were "just trying to make it to retirement" and suggested to the other employee that "he could always get a job at Wal-Mart as a greeter." Third, Clark claims that Matthews sent employees unsolicited mailings from AARP when they turned fifty-six years old. Finally, Clark claims that Matthews retained employees who were younger than him even though they also received poor performance reviews.

After his termination, Clark received notices of his right to sue Matthews from the U.S. Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. Clark then brought this action against Matthews in the United States District Court for the Eastern District of Missouri. Clark alleged that Matthews violated both federal and Missouri anti-age-discrimination laws. Matthews brought a motion for summary judgment, and the district court granted the motion on all of Clark's claims. Clark now appeals, arguing that Matthews committed age discrimination in violation of the ADEA in two ways. First, Clark argues that Matthews committed age discrimination by conducting a RIF that disparately impacted employees over the age of forty. Second, Clark argues that he suffered disparate-treatment age discrimination because Matthews denied his request to design primary packaging and ultimately terminated him because of his age. Finally, Clark also argues that Matthews committed age discrimination in violation of the MHRA because his age was a contributing factor in Matthews's decision to terminate him.

## II. Discussion

"We review a district court's grant of summary judgment de novo." Anderson v. Durham D & M, L.L.C., 606 F.3d 515, 518 (8th Cir. 2010). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-movant, shows that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law. Schultz v. Windstream Commc'ns, Inc., 600 F.3d 948, 951 (8th Cir. 2010). "A genuine issue of material fact exists if a reasonable jury could return a verdict for the party opposing the motion." Humphries v. Pulaski County Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009).

A. Age Discrimination in Employment Act

The ADEA generally prohibits employers from discriminating against employees, age forty and over, because of their age. 29 U.S.C. §§ 623(a)(1), (2); 631(a). Under the ADEA, a plaintiff may prove age discrimination on either a disparate-treatment or disparate-impact theory. According to the disparate-treatment theory, a plaintiff must prove that his employer intentionally discriminated against him because of his age. Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2350 (2009). According to the disparate-impact theory, however, proof of intent is not required. Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 95–96 (2008). Instead, an employer is liable for age discrimination on a disparate-impact theory if one of its policies has had an adverse effect upon employees age forty and over which is "functionally equivalent to intentional discrimination," regardless of whether the employer actually had a discriminatory intent. Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 953 (8th Cir. 2001) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988)). In this case, Clark seeks to use both disparate-treatment and disparate-impact theories to prove that Matthews committed age discrimination.

i. Disparate-Impact Claim

Clark first argues that Matthews's RIF disparately impacted employees age forty and over at the St. Louis Graphics Division. To establish a prima facie case of age discrimination on a disparate-impact theory, a plaintiff must (1) identify a specific, facially neutral employment practice and then (2) present "statistical evidence

of a kind and degree sufficient" to show (3) that the practice caused an adverse employment action (4) that disparately affected workers over age forty. Evers, 241 F.3d at 953. If the plaintiff's prima facie case is met, the burden then shifts to the employer to demonstrate that the policy identified by the plaintiff was based on a "reasonable factor other than age" that was intended to achieve a legitimate goal. Smith v. City of Jackson, 544 U.S. 228, 242 (2005). For the reasons that follow, Clark has not established a prima facie case of disparate-impact age discrimination.

The employment practice that Clark argues caused a disparate impact on workers age forty and over was the RIF from August 18, 2006, to January 31, 2007. To determine whether the RIF had a disparate impact on older employees, we must first determine the relevant pool of workers who were subject to the RIF. Stidham v. Minn. Mining & Mfg., Inc., 399 F.3d 935, 938 (8th Cir. 2005); see also Smith v. Xerox Corp., 196 F.3d 358, 368 (2d Cir. 1999), overruled on other grounds by Meacham v. Knolls Atomic Power Lab., 461 F.3d 134, 139–41 (2d Cir. 2006), rev'd, 554 U.S. 84 (2008). Although fourteen of the fifteen employees who were terminated from August 18, 2006, to January 31, 2007, were over age forty, the pool of terminated employees is not the relevant pool for determining whether a RIF has disparately impacted older employees. See Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003). Moreover, contrary to Clark's argument, the pool cannot be limited to just those employees who worked with Clark in the Art Department. Although these employees were the ones who Peek and Beaver compared with Clark when selecting employees for termination, the Art Department is only one department within the St. Louis Graphics Division. During the RIF, Matthews terminated employees at the St. Louis Graphics Division who worked outside the Art Department. Thus, we cannot agree with Clark that only the St. Louis Graphics Division's Art Department was subject to the RIF. Instead, we agree with the district court that the relevant pool of workers consists of all of the non-management employees at the St. Louis facility.

-7-

Whether older workers in the pool of non-management employees at the St. Louis Graphics Division were disparately impacted by the terminations requires consideration of the percentage of older employees in the group before and after the RIF. See id.; EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 952 (8th Cir. 1999) (noting that the important statistic "is the difference in the percentage of older employees in the work force before and after the RIF"); see also Xerox Corp., 196 F.3d at 368. Prior to the terminations on January 31, 2007, the St. Louis Graphics Division employed 43 non-management employees, 35 of whom were over age forty. After the nine terminations on January 31, 2007, the St. Louis facility employed 34 non-management employees, 26 of whom were over age forty. Thus, the percentage of employees over age forty in this pool dropped from 81.4% to 76.5% after January 31, 2007.

The percentage of employees over age forty drops at a similar rate even if we expand the size of the pool. For example, if we consider the 6 employees who were terminated between August 18, 2006, and January 30, 2007, to be part of the same RIF that the 43 were subject to on January 31, then 49 non-management employees were subject to the RIF, and, at most, 40 of these employees would have been over age forty. Thus, the percentage of non-management employees over age forty would have dropped, at most, from 81.6% prior to August 18, 2006, to 76.5% after January 31, 2007. Finally, even if we consider managerial employees to have been subject to the RIF (except Peek, who was making the decisions), the ratio of employees in the protected age group at the St. Louis facility would have gone from, at most, 44 of 53 prior to August 18, 2006, to 30 of 38 after January 31, 2007. This was a drop of, at most, 4%.[3]

_____

[3] We say "at most" in this paragraph because five of these employees (including one of those terminated between August 18, 2006, and January 31, 2007) might not have been forty years old on August 18, 2006. The record indicates that these five employees were born in 1966, but it does not indicate what month and day they were born. If any of these employees had still been under age forty prior to August 18, 2006, each of the drops in percentage of employees over age forty would have been

The issue then is whether, in a pool of forty-two to fifty-three workers, a 4-5% drop in the employment rate of workers age forty and over is sufficient to establish that the RIF terminations disparately impacted employees over age forty. To establish that a RIF had a disparate impact on older employees, there must have been a "sufficiently substantial" drop in the employment rate of those over age forty to create an inference that employees were terminated because of their age. Watson, 487 U.S. at 994–95. Although there is no "rigid mathematical formula," id., our court has previously held that a 4% drop in the employment rate of over-age-forty employees is not sufficient for purposes of establishing that age was a factor in a termination decision. Stidham, 399 F.3d at 938. Nor are we convinced in this case that a 4-5% drop in the employment rate of workers in the protected age group is sufficiently substantial to create an inference that Clark and other employees were terminated because of their age. Thus, Clark has failed to prove a prima facie case of disparate-impact age discrimination.

### ii. Disparate-Treatment Claims

Clark also argues that he suffered disparate-treatment age discrimination because Matthews intentionally selected him for termination and denied him the opportunity to design primary-packaging because of his age. To establish a disparate-treatment claim of age discrimination under the ADEA, Clark must prove that his age was the "but-for" cause of Matthews's challenged decisions. Gross, 129 S. Ct. at 2350. In other words, Clark must show that if it were not for his age, he would not have been terminated and he would have become a primary-packaging designer. Clark is required to prove that his age was the "but-for" cause of Matthews's challenged decisions regardless of whether he uses direct or circumstantial evidence to prove his age-discrimination claims. Id. at 2351.

---

lower. Since we view the evidence in the light most favorable to Clark, however, we will assume that all five of these employees were over age forty.

After the Supreme Court's decision in <u>Gross</u>, it is unclear whether Clark may prove his age-discrimination claims through use of the evidentiary framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Baker v. Silver Oak Senior Living Mgmt. Co.</u>, 581 F.3d 684, 688 (8th Cir. 2009). Under this framework, if Clark establishes a four-part prima facie case of age discrimination, then Matthews must articulate a legitimate, nondiscriminatory reason for its actions. <u>Thomas v. Corwin</u>, 483 F.3d 516, 528 (8th Cir. 2007). If Matthews does so, then Clark must show that Matthews's proffered reason was pretextual. <u>Id.</u> The Supreme Court in <u>Gross</u> declined to answer whether use of this evidentiary framework is appropriate in the context of ADEA claims. <u>Gross</u>, 129 S. Ct. at 2349 n.2. Other circuits, however, have continued to apply it. <u>See, e.g.</u>, <u>Gorzynski v. Jetblue Airways Corp.</u>, 596 F.3d 93, 106 (2d Cir. 2010); <u>Geiger v. Tower Auto.</u>, 579 F.3d 614, 622 (6th Cir. 2009); <u>Smith v. City of Allentown</u>, 589 F.3d 684, 691 (3d Cir. 2009).

The district court did not apply the <u>McDonnell Douglas</u> framework in this case because Clark did not argue for its application. In his response to Matthews's motion for summary judgment, Clark simply stated that a "'But-for' analysis regarding [his] discrimination allegations" was necessary. On appeal, Clark now argues the district court committed error by not applying the framework. Even now, however, Clark has not argued that he has established a prima facie case of age discrimination under the framework, nor has he argued that Matthews's proffered reasons for terminating him are pretextual.[4] Thus, we decline to apply the <u>McDonnell Douglas</u> framework in this

---

[4] In his brief on appeal, Clark's only reference to the framework is a statement that "[he], of course, maintains that the evidentiary provisions of <u>McDonnell Douglas</u> apply . . . and, accordingly, Matthews is required to produce evidence that its actions or failure to act involving employees in the protected age group were not motivated by age discriminatory motives." Even if this were enough to invoke application of the <u>McDonnell Douglas</u> framework, this is an inaccurate description of how we apply it. Merely "maintain[ing]" that the evidentiary provisions of the <u>McDonnell Douglas</u> framework apply does not require an employer to provide legitimate, non-discriminatory reasons for its decisions. Before an employer faces this burden, the

case. Smith v. City of Des Moines, 99 F.3d 1466, 1473 (8th Cir. 1996) (noting that we do not "reverse a grant of summary judgment on the basis of an argument not presented below").[5] As a result, Clark must prove that his age was the "but for" cause of Matthews's challenged decisions without use of the McDonnell Douglas framework.[6] For the reasons that follow, Clark has failed to raise a genuine issue of material fact on these issues.

Clark has not disputed a number of important issues of fact regarding his skills, the nature of the packaging-design industry, and Matthews's business goals. First, Clark does not dispute that he was selected as part of a RIF that Matthews hoped would boost the St. Louis Graphics Division's sales-per-employee ratio. Next, Clark does not dispute either that primary-packaging design has a higher profit margin than corrugated-packaging design, or that primary-packaging design was the type of packaging that the St. Louis Graphics Division planned to emphasize after the RIF. Third, Clark does not dispute that he designed corrugated packaging, not primary packaging. And finally, although he claims that he competently designed corrugated packaging, he does not dispute that he received performance reviews in 2002, 2004, and 2006 in which he received low marks for productivity. See Evers, 241 F.3d at 957 (noting that terminating an employee based upon poor performance reviews, even if erroneous, is not unlawful).

Nonetheless, Clark claims that certain remarks made by Peek and mailings sent by Matthews indicate that Clark would not have been terminated if it were not for his

_____

plaintiff must allege and prove a four-part prima facie case of age discrimination. Clark has failed to do either of these things before the district court or this court.

[5] We express no opinion regarding whether the McDonnell Douglas framework is otherwise applicable in the ADEA context.

[6] Even if the McDonnell Douglas framework applied in this case, Clark would still ultimately have to prove that his age was the "but for" cause of Matthews's challenged decisions. Gross, 129 S. Ct. at 2350.

age. Clark first claims that Matthews sent unsolicited mailings from the AARP to workers when they turned fifty-six years old. We have held that isolated inquiries into the retirement plans of an employee that are reasonable and not unduly excessive are insufficient to establish age discrimination. Betz v. Chertoff, 578 F.3d 929, 934 (8th Cir. 2009); Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 497 (8th Cir. 1998). Sending an AARP mailing is a reasonable way for an employer to try to determine the retirement plans of employees, which an employer has a legitimate interest in knowing. Id. Thus, these mailings cannot establish age discrimination.

In addition to the AARP mailing, however, Clark claims that Peek asked him if he was "just trying to make it to retirement" and suggested to another worker that he could "always become a Wal-Mart greeter." Age-related comments made by a decisionmaker, such as Peek, generally require closer scrutiny than comments made by non-decisionmakers. See King v. United States, 553 F.3d 1156, 1160–61 (8th Cir. 2009) (noting cases that distinguished comments by decisionmakers from comments by non-decisionmakers). However, isolated remarks regarding retirement and age generally are insufficient to prove age discrimination, especially when it is unclear what context the statements were made in. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1112–13 (8th Cir. 2001). In this case, although Peek uttered the remarks, there is no showing that he made the remarks in reference to a termination decision. Moreover, the other employee to whom Peek made the comments indicated that Peek made them in a joking manner. Generally, an isolated joke, without more, is insufficient to prove age discrimination. See, e.g., Montgomery v. John Deere & Co., 169 F.3d 556, 560–61 (8th Cir. 1999).

Clark seeks to bolster his case by noting that Peek did not select for termination two younger employees who also had some poor performance reviews. Clark argues that the only difference between these retained employees and himself was that the retained employees were younger than him. However, even assuming these two employees received performance reviews that were similar to Clark's, we do not agree that age was the only difference between Clark and the two retained employees. In

-12-

fact, there was a very important difference: these two employees had primary-packaging design experience, whereas Clark did not. In the context of a RIF, age discrimination cannot necessarily be inferred from the fact that an employer retained younger employees. Ward v. Int'l Paper Co., 509 F.3d 457, 461 (8th Cir. 2007). This is especially true, as here, where the employer has retained the younger employees to perform work that the plaintiff had not been performing. Id. Thus, Clark has failed to create a triable issue of fact regarding whether he was intentionally selected for termination during the RIF because of his age.[7]

Apart from his termination-based disparate-treatment claim, Clark finally argues that, because of his age, Matthews failed to initially assign him to the Purple Team, failed to subsequently put him on the Purple Team, and denied him the same equipment and software that was available to Purple Team members. Clark does not dispute, however, that the initial three members of the Purple Team were the only three artists at the St. Louis Graphics Divisions who had primary-packaging design experience. Nor does Clark dispute that only primary-packaging designers received the equipment and software that Clark alleges he was not provided.[8] Moreover,

---

[7] As noted earlier in this opinion, Clark relies on the drop in percentage of over-age-forty employees to prove his disparate-impact age-discrimination claim. Reading Clark's brief, it is unclear whether Clark also relies on this evidence for his disparate-treatment claim. To the extent Clark argues that a 4-5% drop in the percentage of over-age-forty employees at the St. Louis Graphics Division is proof that he was terminated because of his age, we again note that this drop is not sufficient for purposes of establishing age discrimination. Stidham, 399 F.3d at 938. Thus, this evidence fails to create a triable issue of fact on whether Clark was terminated because of his age.

[8] We note that even though the computer hardware and software that Clark was assigned to use was not the same as the primary-packaging designers', Clark always had the ability to use the same equipment that primary-packaging designers used. This is because one of the primary-packaging designers worked nights, so his computer was available for Clark and others to use during the day. Apparently, Clark chose not to use this computer.

although Clark alleges that all three of the artists who were selected for the Purple Team after 2000 were under age forty and that at least one of these artists had no prior experience in primary-packaging, Clark has failed to create a triable issue of fact regarding his own qualifications to join the Purple Team. See Grayson v. City of Chicago, 317 F.3d 745, 748 (7th Cir. 2003) (noting that in the context of a discriminatory failure-to-promote claim, plaintiffs must not only show that they are qualified for the promotion, but that they were as qualified or more qualified than the persons who received the promotions); see also Cardenas v. AT & T Corp., 245 F.3d 994, 998 (8th Cir. 2001) (noting that the plaintiff must show that he is qualified for the promotion). Therefore, Clark has failed to create a triable issue of fact regarding whether his age was the but-for cause of either his preclusion from the Purple Team or his inability to receive certain software and equipment.

B. Missouri Human Rights Act

Like the ADEA, the MHRA generally prohibits employers from discriminating against employees because of their age.[9] Mo. Ann. Stat. § 213.055(1). The standard for proving age discrimination under the MHRA, however, is less demanding than the ADEA's standard. Baker, 581 F.3d at 689–90. Whereas Gross requires plaintiffs to prove that their age was the "but for" cause of an adverse employment action to establish age discrimination under the ADEA, the MHRA only requires plaintiffs to prove that their age was a "contributing factor" in the adverse employment action. Daugherty v. City of Md. Heights, 231 S.W.3d 814, 820 (Mo. 2007).

Under the MHRA's "contributing factor" standard, Clark is not required to prove that his age was the "determining" factor or even a "substantial" factor in Matthews's decisions to keep him off the Purple Team and to ultimately terminate him. All Clark must prove is that his age played "a part in producing" these decisions.

_____

[9] The protected age group under the MHRA is forty to seventy. Mo. Ann. Stat. § 213.010(1).

-14-

Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (quoting McBryde v. Ritenour Sch. Dist., 207 S.W.3d 162, 170 (Mo. Ct. App. 2006)). Thus, the difference between the ADEA and the MHRA is that the former requires that age must have been "the reason" for the adverse employment action, while the latter merely requires that age was "a reason" for the action.

We are unsure whether a Missouri court would find that there is a genuine issue of material fact regarding whether Clark's age was a contributing factor in his termination or the rejection of his request to join the Purple Team. The Missouri courts developed the contributing-factor standard only recently. Although it is clear that the MHRA standard is less demanding than the ADEA standard, the Missouri courts have had few opportunities to apply the standard in the context of age-discrimination claims. Thus, since "the claim raises a novel or complex issue of State law," 28 U.S.C. § 1367(c)(1), we think the prudent decision in this case is to let the Missouri courts decide the matter. See EEOC v. Con-Way Freight, Inc., 622 F.3d 933, 938 (8th Cir. 2010); Gregory v. Dillard's, Inc., 565 F.3d 464, 477 (8th Cir. 2009); Birchem v. Knights of Columbus, 116 F.3d 310, 314 (8th Cir. 1997).

## III. Conclusion

For these reasons, we affirm the judgment of the district court on Clark's ADEA claims and remand the judgment with directions to dismiss Clark's MHRA claim without prejudice.

_____