# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1037
_____

| | |
|---|---|
| Eddy Clark, | * |
| | * |
| Plaintiff-Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Matthews International Corporation, | * |
| | * |
| Defendant-Appellee. | * |

_____

Submitted: January 17, 2011
Filed: May 2, 2011
_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.
_____

MELLOY, Circuit Judge.

This case involves state and federal age-discrimination claims brought by Eddy Clark against his former employer, Matthews International Corporation ("Matthews"). A district court granted a motion for summary judgment in favor of Matthews on these claims, and Clark appealed. On December 27, 2010, we issued a panel opinion in this case. Clark v. Matthews Int'l Corp., 628 F.3d 462 (8th Cir. 2010). We affirmed the district court's grant of summary judgment in favor of Matthews on Clark's federal claim under the Age Discrimination in Employment Act ("ADEA"), but we remanded the case and instructed the district court to dismiss without prejudice Clark's claim under the Missouri Human Rights Act ("MHRA").

Matthews petitions for a panel or en banc rehearing to have our disposition of Clark's MHRA claim reconsidered. According to Matthews, diversity-of-citizenship jurisdiction exists over Clark's MHRA claim. As a result, according to Matthews, we must reach the issue raised in Clark's appeal regarding whether the district court erred in granting summary judgment in favor of Matthews on Clark's MHRA claim. We generally agree, so we grant Matthews's petition for a panel rehearing, vacate the portion of our prior opinion which disposed of Clark's MHRA claim, and reverse the district court's grant of summary judgment in favor of Matthews on Clark's MHRA claim. This grant of panel rehearing does not affect the portion of our prior opinion which affirmed the district court's grant of summary judgment in favor of Matthews on Clark's ADEA claim.

## I. Background

We discussed the relevant facts of this case in our prior opinion, which we quote from extensively here:

> Matthews is a Pennsylvania corporation whose Graphics Division offers graphic-design services to commercial vendors. The Graphics Division has facilities across the United States, including one in St. Louis. The St. Louis Graphics Division hired Eddy Clark, who was age forty-three at the time, to work as an artist in 1992. Clark was hired to design corrugated-cardboard packaging as a member of the St. Louis Graphics Division's Art Department.[1]
>
> Corrugated-packaging design was the primary service that the St. Louis Graphics Division offered its clients when it hired Clark. By 2000, however, the market for corrugated-packaging design had become increasingly competitive. As a result, not only was Matthews's share of

[1] The Art Department is just one of the departments within the St. Louis Graphics Division. Other departments include the Customer Service, Plate Making, Mounting, and Shipping departments.

the corrugated-packaging-design market shrinking, but the profit margin for corrugated-packaging design was shrinking as well. Thus, Matthews sought to diversify its packaging-design services at the St. Louis Graphics Division. Specifically, although it had no plans of abandoning its design of corrugated packaging at that time, Matthews wanted to begin designing primary packaging at its St. Louis facility.

Primary packaging is substantially different from corrugated packaging. Primary packaging is the packaging that firms use to enclose their products; as a result, it is the packaging that consumers actually see. Primary packaging consists of the colorful labels and packages that are intended to catch a consumer's eye as they browse products in a retail store. Corrugated packaging, on the other hand, consists of the cardboard boxes that products are shipped and stored in.

In 2000, to spur development of its primary-packaging-design services at the St. Louis facility, Matthews hired a person with primary-packaging-design experience, Randall Peek, to be a manager within the site's Art Department and to oversee the nine artists who designed packaging. Peek formally divided the artists into three teams—Blue, Red, and Purple—with three artists per team. The Blue Team designed basic one- and two-color corrugated packaging, the Red Team designed intermediate-level corrugated packaging, and the Purple Team designed multi-color primary packaging.

According to Peek, he formed the teams based upon the artists' previous work experiences. Peek placed the three artists who had already been designing primary packaging on the Purple Team. Peek selected Clark, age fifty-one at the time, for the Blue team. Although Clark had twenty-five years of experience in designing magazine advertisements, promotional brochures, flyers, catalogs, and corrugated packaging, Clark did not have the type of experience and training in primary packaging that the three Purple Team members had. After the division, the ages of the Purple Team members (27, 28, 37) were relatively lower than the ages of the members of the Red Team (31, 43, 50) and the Blue Team (35, 51, 54).

After the initial division in 2000, artists generally designed either corrugated or primary packaging exclusively. This is because, according to Peek, designing primary packaging requires different experience, training, and natural ability than designing corrugated packaging. During his deposition, Peek described the difference between designing these forms of packaging as similar to the difference between "drawing a cartoon and doing a Picasso." As a consequence, primary-packaging designers generally need to use different computers and software than corrugated-packaging designers. Clark asked to join the Purple Team in 2005, but Peek did not feel Clark was sufficiently skilled to design primary-packaging.

Peek claims his reluctance to place Clark on the Purple Team was due in part to Clark's performance reviews. From 2000 onward, the St. Louis Graphics Division consistently tried to increase its sales-per-employee ratio. As a result, artists were required to produce better work at a quicker pace. However, Clark's performance reviews indicate he was unable to keep up with these rising expectations. In 2002, Clark's review indicates he was not meeting the company's standards for volume of work produced, that he needed to improve his work on VIP orders, and that he needed to reduce his number of errors. A 2004 review indicates that Peek told Clark that he would issue him a written warning if he did not begin working more quickly while committing fewer errors. Although Clark's review improved slightly in 2005, his review in 2006 again indicates that he was not meeting the company's productivity standards.

Matthews also tried to boost its sales-per-employee ratio at the St. Louis Graphics Division by routinely conducting reductions-in-force ("RIF"). The terminations for the RIF relevant to this case occurred from August 18, 2006, through January 31, 2007. Prior to the RIF, Matthews officials determined how many employees needed to be cut at the St. Louis Graphics Division. Then, Peek[2] and Matthews's Vice-President of Operations, Kerry Beaver, claimed that they compiled a list of

---

[2] By the time of the RIF terminations, Peek had been promoted to Production Manager at the St. Louis facility.

employees who should be cut at the St. Louis facility based upon the fit between their skills and the future work to be performed with a reduced staff. They then sent this list to the Regional Human Resources Manager, who claimed she reviewed the list to compare those selected for the RIF with those who were not selected to ensure terminations were based upon job performance.

Clark, age fifty-seven at the time, was selected for the RIF and terminated on January 31, 2007. According to Peek, Clark was chosen, at least in part, because he did not have the skills for primary-packaging design, which had a greater profit margin than corrugated-packaging design. Additionally, Peek claimed Clark's performance reviews indicating poor productivity contributed to his termination.

For a number of reasons, however, Clark believes his selection for the RIF was due to his age, not his abilities. First, fourteen of the fifteen employees terminated from August 18, 2006, to January 31, 2007, were over the age of forty. Second, Clark alleges that, shortly before his termination, Peek asked him and another employee if they were "just trying to make it to retirement" and suggested to the other employee that "he could always get a job at Wal-Mart as a greeter." Third, Clark claims that Matthews sent employees unsolicited mailings from AARP when they turned fifty-six years old. Finally, Clark claims that Matthews retained employees who were younger than him even though they also received poor performance reviews.

After his termination, Clark received notices of his right to sue Matthews from the U.S. Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. Clark then brought this action against Matthews in the United States District Court for the Eastern District of Missouri. Clark alleged that Matthews violated both federal and Missouri anti-age-discrimination laws. Matthews brought a motion for summary judgment, and the district court granted the motion on all of Clark's claims.

Clark, 628 F.3d at 464–66. Clark appeals the district court's grant of summary judgment in favor of Matthews. In Section II.A of our prior opinion, we affirmed the

district court's grant of summary judgment in favor of Matthews on Clark's claim under the ADEA. Id. at 469–72. However, in Section II.B of the opinion, since we had disposed of Clark's federal claim, we declined to exercise supplemental jurisdiction to decide whether the district court properly granted summary judgment in favor of Matthews on Clark's MHRA claim. Thus, we remanded the case and instructed the district court to dismiss Clark's MHRA claim without prejudice. Id. at 472.

Matthews now petitions for a panel or en banc rehearing to have us reconsider our disposition of Clark's MHRA claim. According to Matthews, since diversity-of-citizenship jurisdiction—not just supplemental jurisdiction—exists over Clark's MHRA claim, we must reach the issue raised in Clark's appeal regarding whether the district court erred in granting summary judgment in favor of Matthews on Clark's MHRA claim.

## II. Discussion

### A. Diversity-of-Citizenship Jurisdiction over Clark's MHRA Claim

We first address Matthews's claim that diversity-of-citizenship jurisdiction exists over Clark's MHRA claim pursuant to 28 U.S.C. § 1332(a)(1). That statute provides that federal jurisdiction exists over "civil actions" between "citizens of different States" where the amount in controversy exceeds "the sum or value of $75,000." In his initial complaint, Clark alleged that diversity-of-citizenship jurisdiction exists over his MHRA claim after alleging that he is a "citizen of the State of Missouri" and that "Matthews is a Pennsylvania corporation with its principal place of business in Pennsylvania." In its answer, Matthews admitted the truth of Clark's allegations as to the parties' citizenship and also admitted that diversity-of-citizenship jurisdiction exists over Clark's MHRA claim. "While it is true that consent alone cannot confer subject matter jurisdiction," we take note of the parties'

previous agreement on their diverse citizenship.  Smith v. Ashland, Inc., 250 F.3d 1167, 1172 (8th Cir. 2001).

Despite this previous agreement, Clark now argues that the record never established that diversity-of-citizenship jurisdiction exists over his MHRA claim. Thus, Matthews is now the party asserting jurisdiction, so Matthews bears the burden of proving by a preponderance of the evidence that diversity-of-citizenship jurisdiction exists over Clark's MHRA claim.  Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009); see also 4:20 Commc'ns, Inc. v. Paradigm Co., 336 F.3d 775, 779 (8th Cir. 2003).  There is no question that the parties are citizens of different States; the only question is whether the amount in controversy exceeds $75,000.  Since Clark did not allege a specific amount in controversy in his complaint, the amount in controversy depends upon the value of the relief Clark seeks.  See Usery v. Anadarko Petroleum Corp., 606 F.3d 1017, 1018 (8th Cir. 2010).

Matthews notes that Clark seeks to recover a number of forms of relief if he is successful on his MHRA claim.  One form of relief Clark seeks is back pay.  See Pollock v. Wetterau Food Distribution Grp., 11 S.W.3d 754, 770 (Mo. Ct. App. 1999) (noting back pay is recoverable under the MHRA).  Back pay is calculated based upon "the difference between the value of the compensation the plaintiff would have been entitled to had he remained employed by the defendant and whatever wages he earned during the relevant period."  Hartley v. Dillard's, Inc., 310 F.3d 1054, 1062 (8th Cir. 2002).  Generally, the "relevant period" runs from the date of termination until the date of reinstatement or judgment.  Morgan v. City of St. Louis, 154 S.W.3d 6, 12 (Mo. Ct. App. 2004); Nord v. U.S. Steel Corp., 758 F.2d 1462, 1472–73 (11th Cir. 1985).

In this case, the record indicates that at the time of his termination on January 31, 2007, Clark earned at least $42,000 annually as a Matthews employee.  Had Clark remained employed with Matthews at this same salary, he would have earned at least

$168,000 from January 31, 2007, to the present. Although a proper calculation of back pay would account for the earnings Clark received from any employment that he held after his termination from Matthews, the record is unclear regarding these earnings. The record indicates that Clark was employed part-time with a retail store and that he worked as a security officer for at least two companies beginning at some point prior to October of 2008. The record does not indicate, however, the dates Clark was employed in these positions or the exact amounts that Clark earned in these positions. The record does suggest, however, that Clark's earnings were probably modest.[3] As a result, although this question is not free from doubt, we believe it is more likely than not that the back pay award that Clark seeks by itself exceeds $75,000. Consequently, we believe Matthews has carried its burden of proving by a preponderance of the evidence that diversity-of-citizenship jurisdiction exists over Clark's MHRA claim.[4]

Our conclusion that diversity-of-citizenship jurisdiction exists over Clark's MHRA claim requires us to revisit our disposition of this claim in our prior opinion. In that opinion, we declined, pursuant to 28 U.S.C. § 1367(c)(1), to exercise supplemental jurisdiction over Clark's MHRA claim because it "raises a novel or complex issue of State law." Clark, 628 F.3d at 472 (citing § 1367(c)(1)). However, the Supreme Court has indicated that, as a general rule, the novelty or complexity of a state-law issue is not an appropriate basis upon which to remand a case when diversity-of-citizenship jurisdiction exists. McNeese v. Bd. of Educ., 373 U.S. 668, 673 n.5 (1963); Meredith v. City of Winter Haven, 320 U.S. 228, 234–37 (1943); see

[3] The record indicates that Clark worked eight hours per week and earned $7.75 per hour in his retail position. In one of his two positions as a security officer, the record indicates that Clark worked thirty-five hours per week and earned $10 per hour. The record does not indicate what Clark earned in his second position as a security officer.

[4] This conclusion is bolstered by the fact that, in addition to a back-pay award, Clark seeks emotional-distress damages, punitive damages, and a front-pay award.

also <u>Chi., Burlington & Quincy R.R. Co. v. City of N. Kan. City</u>, 276 F.2d 932, 937 (8th Cir. 1960). Although there may be exceptions to this rule, <u>see, e.g.</u>, <u>Hatfield v. Bishop Clarkson Mem'l Hosp.</u>, 679 F.2d 1258, 1261 n.4 (8th Cir. 1982), we do not believe an exception applies in this case. Therefore, we grant Matthews's petition for a panel rehearing, vacate Section II.B of our prior opinion, and proceed to the merits of Clark's MHRA claim.

## B. Clark's MHRA Claim

On appeal, Clark argues that the district court erred when it granted Matthews's motion for summary judgment on his MHRA claim. We review a district court's grant of summary judgment de novo. <u>Baker v. Silver Oak Senior Living Mgmt. Co.</u>, 581 F.3d 684, 687 (8th Cir. 2009). "Summary judgment is appropriate if the evidence, viewed most favorably to the nonmovant, shows no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." <u>Schultz v. Windstream Commc'ns, Inc.</u>, 600 F.3d 948, 951 (8th Cir. 2010). "A genuine issue of material fact exists if a reasonable jury could return a verdict for the party opposing the motion." <u>Humphries v. Pulaski Cnty. Special Sch. Dist.</u>, 580 F.3d 688, 692 (8th Cir. 2009).

The MHRA and the ADEA are worded similarly. Both statutes generally prohibit employers from discriminating against their employees "because of" their age. 29 U.S.C. § 623(a)(1); Mo. Ann. Stat. § 213.055(1). Under the ADEA, the United States Supreme Court has stated that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." <u>Gross v. FBL Fin. Servs., Inc.</u>, 129 S. Ct. 2343, 2350 (2009). Under the ADEA, "therefore, a plaintiff must prove that age was the 'but for' cause of the employer's adverse decision." <u>Id.</u> In our prior opinion, we explained that this meant that Clark had to "show that if it were not for his age, he

would not have been terminated and he would have become a primary-packaging designer." Clark, 628 F.3d at 469.

Under the MHRA, however, Clark is not required to prove that age was the "but for" cause of Matthews's adverse employment actions. According to the Supreme Court of Missouri, "[n]othing in [the] statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age . . . contributed to the unfair treatment, that is sufficient." Daugherty v. City of Md. Heights, 231 S.W.3d 814, 819 (Mo. 2007). The Missouri Court of Appeals has defined a "contributing factor" in this context as one "that contributed a share in anything or has a part in producing the effect." Williams v. Trans State Airlines, 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (internal quotation marks omitted). Recent Supreme Court of Missouri case law supports this definition. Fleshner v. Pepose Vision Inst., 304 S.W.3d 81, 94 (Mo. 2010) (noting that "cases involving . . . the MHRA . . . turn on whether an illegal factor played *a role* in the decision to discharge the employee" (emphasis added)). Essentially, as we noted in our prior opinion, "the difference between the ADEA and the MHRA is that the former requires that age must have been 'the reason' for the adverse employment action, while the latter merely requires that age was 'a reason' for the action." Clark, 628 F.3d at 472; see also Baker, 581 F.3d at 689–90 (noting that the Supreme Court of Missouri has "held that the MHRA is less demanding than the ADEA").

In this case, Clark argues that he created a genuine issue of material fact regarding whether his age was a contributing factor in Matthews's decisions to not promote him to a primary-packaging-design position and to ultimately terminate him. We agree. Generally, Matthews claims it made these decisions based upon Clark's skills, his performance reviews, and because of changes in the packaging-design market. However, there is evidence that Clark's skills as a corrugated-packaging designer were adequate, and there is evidence that other Matthews employees had

performance reviews comparable to Clark's reviews yet were not terminated. Moreover, even though there is no evidence suggesting that Clark competently designed primary packaging, there is evidence that virtually every primary-packaging designer at Matthews was under the age of forty. Additionally, Clark has produced evidence that Matthews sent AARP mailings to its employees on their fifty-sixth birthday and that a Matthews official who made termination decisions made retirement-related comments and jokes.[5] Finally, and perhaps most importantly, Clark has produced evidence, as we noted in our prior opinion, that he was part of a RIF at Matthews that disproportionately affected older employees. Specifically, according to Clark's evidence, there were between forty-two and fifty-three workers subject to the RIF, and, after the RIF, the percentage of workers age forty and over in this pool dropped roughly 4-5%. Clark, 628 F.3d at 468.

Clark's evidence, as we concluded in our prior opinion, does not create a triable issue of fact regarding whether Clark suffered adverse employment actions "because of" his age for purposes of the ADEA. It does not necessarily follow from this conclusion, however, that Clark's evidence does not create a triable issue of fact regarding whether Clark's age contributed to the adverse employment actions taken against him for purposes of the MHRA. Clark's MHRA claim survives summary judgment if there is a triable issue of fact regarding whether Clark's age played a part in producing his inability to become a primary-packaging designer or his ultimate termination, even if it is apparent that Clark's age was not a substantial, determining, or but-for cause of these employment decisions. On this record, we cannot say that it would be unreasonable for a jury to conclude that Clark's age played a part in

---

[5] We questioned whether this evidence was truly probative of age discrimination in our prior opinion, Clark, 628 F.3d at 470–71, and we continue to do so here. Nonetheless, we cannot say that this evidence is completely irrelevant. Instead, a jury should be allowed to weigh this evidence along with the rest of Clark's evidence to decide whether Clark's age contributed to Matthews's decisions to not promote Clark and to ultimately terminate him.

producing the adverse employment actions he alleges. Therefore, the district court erred when it granted summary judgment in favor of Matthews on Clark's MHRA claim.

## III. Conclusion

In sum, we grant Matthews's petition for a panel rehearing, vacate Section II.B of our prior opinion, and reverse the district court's grant of summary judgment in favor of Matthews on Clark's MHRA claim. We remand the case to the district court for proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

There is considerable irony in the court's resolution of the petition for rehearing and Eddy Clark's claim under the Missouri Human Rights Act ("MHRA"). In a prior opinion, this panel affirmed the district court's dismissal of Clark's age-discrimination claim under the federal Age Discrimination in Employment Act and directed the district court to dismiss the state-law claim without prejudice. *Clark v. Matthews Int'l Corp.*, 628 F.3d 462 (8th Cir. 2010) ("*Clark I*"). Clark, who included a conclusory assertion of diversity jurisdiction in his complaint, nonetheless opposed Matthews International Corporation's call for this court to recognize federal jurisdiction over the state-law claim, arguing that the panel's disposition was reasonable in light of the record concerning amount in controversy. Whatever the merits of Clark's position – likely formed on a prudent assumption that the panel would follow the reasoning of the prior opinion to its logical conclusion and affirm the district court's dismissal of the MHRA claim – it appeared quite sound as a tactical matter. Imagine the surprise of both parties to see that the court has granted the petition for rehearing, yet discerned a submissible claim of discrimination under the MHRA.

-12-

The best resolution at this juncture would be to accept Clark's position that the petition for rehearing should be denied. To invoke the jurisdiction of a federal court under 28 U.S.C. § 1332, a plaintiff must allege that the amount in controversy exceeds $75,000. Clark's complaint alleged *no amount* in controversy for his MHRA claim. R. Doc. 1, at 1-4. "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal citation and quotations omitted). If the plaintiff in a putative diversity case "fails to make the necessary allegations he has no standing." *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Clark's complaint was therefore insufficient to invoke the jurisdiction of a federal court under § 1332.

Given that Clark has disavowed any present desire to invoke federal jurisdiction on the state-law claim, there is no need for this court to consider treating his defective complaint as amended on appeal. *Cf. Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990). The court addresses the petition for rehearing as though the case is in federal court on removal from state court pursuant to 28 U.S.C. § 1441, *ante*, at 7 (citing *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009)), or as though Matthews were the plaintiff, *id.* (citing *4:20 Commc'ns, Inc. v. Paradigm Co.*, 336 F.3d 775, 779 (8th Cir. 2003)), but the case is not in either posture. If Clark were to refile an MHRA claim in state court after dismissal of his federal complaint, then a question of removal jurisdiction may be presented based on whatever complaint is then filed, but this case is before us only on a federal complaint filed by Clark with a defective allegation of jurisdiction under § 1332. The original disposition was sound on the record presented.

Nonetheless, the majority having elected to assert jurisdiction over Clark's MHRA claim, and the district court having properly exercised supplemental jurisdiction under 28 U.S.C. § 1367 to address the claim, I would affirm the district

court's dismissal. Although the MHRA, like the ADEA, makes it an unlawful employment practice for an employer to discharge any individual "because of" such individual's age, 29 U.S.C. § 623(a); Mo. Rev. Stat. 213.055(1), the Supreme Court of Missouri has opined that if an employer's consideration of age "contributed to . . . unfair treatment" of an employee, even if age was not a substantial or determining factor in an employment decision, then the employer has violated the MHRA. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. 2007). This court has expressed uncertainty about how Missouri courts would apply their "contributing factor" analysis where it is established, at a minimum, that the employer would have taken its adverse action regardless of the employee's age. *See EEOC v. Con-Way Freight, Inc.*, 622 F.3d 933, 938 (8th Cir. 2010). But whatever the circumstances in which evidence might add up to a violation of the state statute without showing a violation of federal law, zero plus zero still equals zero under the MHRA.

The court says that "perhaps most importantly," Clark's claim is supported by evidence that a reduction-in-force ("RIF") implemented by Matthews reduced the percentage of workers aged forty and over by "roughly 4-5%." *Ante*, at 11. Our prior opinion, however, in terms applicable to the MHRA, cited circuit precedent that "a 4% drop in the employment rate of over-age-forty employees is not sufficient for purposes of establishing *that age was a factor* in a termination decision." *Clark I*, 628 F.3d at 469 (emphasis added). *See Stidham v. Minn. Mining & Mfg., Inc.*, 399 F.3d 935, 938 (8th Cir. 2005) (concluding that a 4% decline in the work force over age forty and a half-year decrease in the average age of the work force after a reduction-in-force was "not statistically significant" in a case arising under the MHRA). The statistical evidence is no more persuasive on rehearing than it was in *Clark I*.

The court relies on the fact that "other Matthews employees had performance reviews comparable to Clark's reviews yet were not terminated." *Ante*, at 10-11. As explained in our prior opinion, however, "there was a very important difference"

-14-

between Clark and the others: "these two employees had primary-packaging design experience, whereas Clark did not." 628 F.3d at 471. Clark does not dispute that Matthews hoped the RIF would boost the company's profits, or that Matthews planned to emphasize the more profitable primary packaging design activities after the RIF. *Id*. at 470. That Matthews retained two employees with experience in the area of planned emphasis rather than Clark, who lacked such experience, does not support an inference that age was a contributing factor in the company's decision to discharge Clark. That Clark may have displayed "adequate" skills in designing a *different* type of packaging does not advance his claim when, as the court acknowledges, "there is no evidence suggesting that Clark competently designed *primary* packaging." *Ante*, at 10-11 (emphasis added).

The court cites evidence that "virtually every primary-packaging designer at Matthews was under the age of forty," *ante*, at 11, but never explains how that fact supports an inference that Matthews discriminated against Clark. Clark does not dispute that primary packaging had a higher profit margin than other work, and that the shift to primary packaging was motivated by a desire for higher profits. *Clark I*, 628 F.3d at 470. The decision to retain primary-packaging designers flows naturally from the company's undisputed legitimate business motives. If the court means to suggest that the company might have considered age as a factor in excluding Clark from the team of employees that designed primary packaging before the reduction-in-force, such a suggestion is foreclosed by our prior conclusion that "Clark has failed to create a triable issue of fact regarding his own qualifications to join the Purple Team." *Id.* at 472.

Finally, the court mentions evidence that Matthews sent AARP mailings to its employees on their fifty-sixth birthday and that a Matthews official made retirement-related comments and jokes. The court "question[s] whether this evidence [i]s truly probative of age discrimination," but at the same time declares that it is not "completely irrelevant" to Clark's MHRA claim. *Ante*, at 11 n.5. Aside from the

-15-

internal inconsistency of deciding that evidence is relevant while reserving judgment on whether it is truly probative, *see* Fed. R. Evid. 401, the court's apparent assignment of weight to this evidence conflicts with our prior opinion and with Missouri law. "Sending an AARP mailing is a reasonable way for an employer to try to determine the retirement plans of employees, which an employer has a legitimate interest in knowing," *Clark I*, 628 F.3d at 470, and "inquiries into the retirement plans of an employee who is of retirement age do not rise to the level of age discrimination" under the MHRA. *Stanley v. JerDen Foods, Inc.*, 263 S.W.3d 800, 804 (Mo. Ct. App. 2008). As to the retirement-related comments and jokes, we said before that "although [the official] uttered the remarks, there is no showing that he made the remarks in reference to a termination decision," and that "[g]enerally, an isolated joke, without more, is insufficient to prove age discrimination." *Clark I*, 628 F.3d at 471. This was a correct statement of Missouri law as well. *See Daugherty*, 231 S.W.3d at 818 n.4; *Stanley*, 263 S.W.3d at 804.

The evidence presented by Clark is insufficient to create a submissible case of age discrimination under the Missouri Human Rights Act. I would therefore affirm the judgment of the district court in its entirety.

_____