

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| MISSOURI ETHICS COMMISSION, | ) | |
| Respondent, | ) | WD84233 |
| v. | ) | |
| | ) | |
| PHILIP LEVOTA, | ) | FILED: December 14, 2021 |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE PATRICIA S. JOYCE, JUDGE

### BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE, GARY D. WITT AND EDWARD R. ARDINI, JR., JUDGES

After the Missouri Ethics Commission ("MEC") determined that Philip LeVota violated campaign finance laws and issued two $10,000 civil fees against him, LeVota appealed to the Administrative Hearing Commission ("AHC"). The AHC disagreed with the MEC and found that LeVota did not violate campaign finance laws and was not subject to a civil fee. The circuit court reversed the AHC's decision. On appeal, the MEC seeks review of the AHC's decision, contending that the AHC erred in finding that LeVota could not be held liable because he was not associated with a continuing committee and did not use committee contributions for impermissible purposes. The MEC further argues that the AHC erred in finding that the MEC needed to include an argument as an

affirmative defense and in stating that it was reviewing the MEC's order of only one $10,000 fee. For reasons explained herein, we affirm the AHC's decision that LeVota did not violate Section 130.034, RSMo 2016,[1] but reverse the AHC's decision finding LeVota not liable for violating Section 130.031.2. We remand the case to the circuit court with directions to remand the case to the AHC. The AHC is directed to remand the case to the MEC. The MEC is directed to order the appropriate penalty for LeVota's violation of Section 130.031.2.

## FACTUAL AND PROCEDURAL HISTORY

In April 1998, the Show-Me Council ("Council"), a continuing committee as defined by Section 130.011(10),[2] was formed and registered with the MEC. The MEC statement of committee organization for the Council listed Chris Whiting as its treasurer and LeVota as its chairman. In January 2000, the Council filed an amended statement of committee organization listing LeVota as its treasurer. No other officers were listed on the form. According to LeVota, he ceased being chairman of the Council at that time and was only the Council's treasurer. In July 2003, the Council filed another amended statement of committee organization

---

[1] All statutory references are to the Revised Statutes of Missouri 2016.

[2] Section 130.011(10) defines a "continuing committee," in pertinent part, as:

> [A] committee of continuing existence which is not formed, controlled or directed by a candidate, and is a committee other than a candidate committee or campaign committee, whose primary or incidental purpose is to receive contributions or make expenditures to influence or attempt to influence the action of voters whether or not a particular candidate or candidates or a particular ballot measure or measures to be supported or opposed has been determined at the time the committee is required to file any statement or report pursuant to the provisions of this chapter.

2

listing LeVota's wife, Katherine Stepanek, as the Council's treasurer. Again, no other officers were listed on the form. According to LeVota, he has not held any position with the Council since that time.

Since its formation, the Council has maintained a bank account at UMB with Whiting and LeVota as signatories on the account. When Stepanek attempted to become a signatory after she became the Council's treasurer, she was unable to do so because UMB required Whiting to be present. Stepanek has never been made a signatory on the Council's account.

**$4,000 and $950 Withdrawals from the Council's Account**

In 2013, the Committee for Research Treatment and Cures ("CRTC") approached LeVota to assist as a campaign consultant with a ballot issue. The CRTC was to pay LeVota $4,750 for his services. On November 1, 2013, the CRTC wrote a check to the Council for $4,750. On the CRTC's itemized expenditures form that it filed with the MEC, it listed the purpose of this expenditure to the Council as "leaflet distribution and endorsement support." The CRTC's check was deposited in the Council's bank account.

LeVota subsequently submitted an invoice to the Council for $4,950. The invoice, dated November 15, 2013, stated that it was "[f]or campaign efforts relating to support for Jackson County's Ballot Question 1 on the November 5, 2013 ballot. Consisting of direction and consultation with the Translational Research Committee and the Committee for Research Treatments and Cures' efforts." On September 30, 2014, LeVota withdrew $4,000 in cash from the

3

Council's account.  LeVota then purchased a cashier's check, made payable to Chase Card Services, for that amount and listed himself as the remitter.  He used the check to pay his business credit card.  On May 4, 2015, LeVota wrote a check, made payable to "cash," on the Council's account for $950.  According to LeVota, Stepanek authorized both the $4,000 and $950 withdrawals as payment to him for the services he provided as a vendor.

The Council did not file quarterly disclosure reports with the MEC listing the CRTC's $4,750 contribution or the Council's $4,000 and $950 expenditures to LeVota.  Instead, the Council filed committee statement of limited activity reports on January 13, 2014, October 13, 2014, and July 7, 2015.  Each of these reports contained a certification by Stepanek that, for the quarter covered by the report, "neither the aggregate amount of contributions received nor the aggregate amount of expenditures made by the committee exceeded five hundred dollars."

### $360 Withdrawal from the Council's Account

On January 17, 2014, LeVota withdrew $360 in cash from the Council's bank account and donated it to the Season of Sharing ("SOS") Foundation.  The SOS Foundation is a charity that passes out money to people in Kansas City around Christmastime.  A news article about the SOS Foundation, which was posted online on December 16, 2015, described the SOS Foundation as a "brand new local nonprofit that will help those in need around the holidays."  The SOS Foundation was incorporated by LeVota and another person as a nonprofit public corporation on September 16, 2016.  The SOS Foundation credited the Council for

4

the $360 donation on its "Official Donation Receipt For Income Tax Purposes" form, dated January 30, 2014. According to LeVota, Stepanek authorized the $360 withdrawal from the Council's account and donation to the SOS Foundation.

*MEC's Audit of the Council, Consent Order, and Complaint Against LeVota*

In 2015, a citizen filed a complaint with the MEC alleging campaign finance violations in an Independence City Council election. The complaint named three entities: the Council; Stepanek, as the Council's treasurer; and LeVota. While investigating this complaint, the MEC initiated an audit of the Council due to compliance issues found while conducting the investigation. Following the audit, the MEC filed a 12-count complaint; nine counts were against the Council and Stepanek, and three counts were against LeVota.

In January 2017, the Commission entered a consent order against the Council and Stepanek resolving the nine counts against them. The Council and Stepanek stipulated to seven violations, including four related to the transactions involving LeVota: (1) failure to disclose expenditures made for not reporting the $4,000 cashier's check to Chase Credit Card, $950 cash withdrawal, and $360 cash withdrawal, in violation of Section 130.041.1(4); (2) failure to report contributions received for not reporting the CRTC's $4,750 contribution, in violation of Section 130.041.1(3); (3) committee expenditures of $4,000, $950, and $360 were not made by checks signed by the Council's treasurer but were instead made by LeVota, who was not the Council's treasurer at that time, in violation of Sections 130.021.4(1) and 130.031.2; and (4) failure to file required quarterly disclosure

5

reports and improperly filing limited activity reports, in violation of Sections 130.041 and 130.046. For these violations, the MEC imposed a $10,000 fee against the Council and Stepanek.[3] Following the entry of the consent order, the Council filed an amended January 2014 quarterly report in August 2017. The Council's amended quarterly report listed the CRTC's $4,750 contribution, the $4,950 expenditure to LeVota, and the $360 expenditure to the SOS Foundation.

The MEC held a hearing on the three counts against LeVota. Only two of the three counts concerned the transactions at issue here.[4] Following the hearing, the MEC entered its findings of fact, conclusions of law, and order finding probable cause that LeVota knowingly violated campaign finance statutes. Rejecting LeVota's argument that he could not be held liable because he was not the Council's registered treasurer, the MEC found that he was *acting* as the Council's treasurer and, therefore, was subject to the campaign finance statutes. With regard to Count II, the MEC determined there was probable cause to find that LeVota violated Section 130.031.2 in two respects: (1) he violated the statute's requirement that committee expenditures of more than $50 must be made by a check drawn on the committee's account and signed by the committee treasurer

---

[3] The consent order provided that, if the Council and Stepanek paid $1,000 of the $10,000 fee within 45 days of the date of the order, the remainder of the fee would be stayed unless the Council or Stepanek committed any further violations of the campaign finance laws within two years.

[4] The other count pertained to the Independence City Council election. The MEC found in favor of LeVota on this count, and it is not at issue in this appeal.

when he withdrew $4,000, $950, and $360 in cash from the Council's account; and (2) he violated the statute's prohibition against making a check payable to "cash" except to replenish a petty cash fund. With regard to Count III, the MEC determined that there was probable cause to find that LeVota violated Section 130.034.1's prohibition against using contributions received by a committee for his personal use, because the $4,000 cashier's check was to pay, at least, in part, his personal expenses and debts, and the $950 and $360 withdrawals were not made for any allowable purpose under Section 130.034.2. Pursuant to Section 105.961.4(6), the MEC ordered that a fee be imposed against LeVota in the amount of $10,000 for each of the two counts, for a total of $20,000.[5]

### *Appeal to AHC and Petition for Judicial Review*

LeVota appealed the MEC's order to the AHC. The AHC held an evidentiary hearing, during which LeVota and the MEC's supervisor of investigations assigned to the case testified. Following the hearing, the AHC entered its decision concluding that LeVota did not violate campaign finance laws. In its findings of fact, the AHC found that Stepanek was the Council's treasurer and that LeVota had not held a position with the Council since July 2003. The AHC further found that Stepanek, as the Council's treasurer, authorized LeVota's withdrawals of $4,000, $950, and $360; that the $4,000 that LeVota withdrew to purchase a cashier's check to pay his business credit card was properly owed to him for expenses he

---

[5] The MEC's order provided that, if LeVota paid $2,000 of the $20,000 fee within 45 days of the date of the order, the remainder of the fees would be stayed unless LeVota committed any further violations of campaign finance laws within two years.

7

incurred on behalf of the Council; that the $950 LeVota withdrew was properly owed to him for his work as a campaign consultant; and that the $360 LeVota withdrew was donated to a charity, the SOS Foundation.

In its conclusions of law, the AHC determined that the plain language of Section 130.031.2 does not allow for imposing fees on an individual not associated with a committee, and LeVota was not associated with the Council at the time of the transactions. The AHC further concluded that the MEC failed to sustain its burden of proving that LeVota violated Section 130.034.1 and .2, because LeVota established that the payments made were for allowable purposes. Because it determined that LeVota did not violate campaign finance laws, the AHC concluded that he was not subject to a civil fee under Section 105.961.4(6).

The MEC subsequently filed a petition for judicial review of the AHC's decision in the Circuit Court of Cole County. After reviewing the administrative record and the parties' briefs, the court found that the AHC's decision was arbitrary, capricious, unreasonable, unlawful, not supported by substantial and competent evidence on the record as a whole, and an abuse of discretion. Therefore, the court reversed the AHC's decision and approved and adopted the MEC's findings of fact, conclusions of law, and order. LeVota appeals.[6]

## STANDARD OF REVIEW

On an appeal from the trial court's review of an AHC decision, we review the decision of the AHC, not the judgment of the trial

---

[6] Because the MEC is the party aggrieved by the AHC's decision, the MEC has filed the appellant's brief and reply brief. Rule 84.05(e).

court. The AHC's decision will be upheld unless it is not supported by competent and substantial evidence upon the whole record; it is arbitrary, capricious, or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized by law or in violation of constitutional provisions.

In determining whether a decision is supported by competent and substantial evidence, we review the record as a whole and determine whether the AHC's decision is against the overwhelming weight of the evidence. Though we do not view the AHC's factual findings in the light most favorable to the decision, we still must defer to its credibility findings, as the AHC is the sole judge of the credibility of witnesses and the weight and value to give to the evidence. We review the AHC's conclusions on the interpretation and application of the law, however, *de novo.*

*Cash v. Mo. Dep't of Revenue*, 461 S.W.3d 57, 60 (Mo. App. 2015) (quoting

*Faenger v. Bach,* 442 S.W.3d 180, 185-86 (Mo. App. 2014) (citations and internal

quotation marks omitted)).

## ANALYSIS

In Point I, the MEC contends the AHC erred in concluding that LeVota did

not violate Section 130.031.2 because he was not associated with the Council

when he withdrew $4,000, $950, and $360 from the Council's account. The MEC

argues that anyone who is not the committee treasurer, deputy treasurer, or

candidate who withdraws more than $50 in cash can be held liable for violating

the statute, while LeVota contends that only the committee treasurer can be held

liable for violating the statute. Resolution of this point requires us to interpret the

language of Section 130.031.2.

9

"The goal of statutory analysis is to ascertain the intent of the legislature, as expressed in the words of the statute." *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909 (Mo. banc 2006). "This goal is achieved by giving the language used its plain and ordinary meaning." *Id*. at 910. "When the legislative intent cannot be determined from the plain meaning of the statutory language, rules of statutory construction may be applied to resolve any ambiguity." *Id*. "In determining the intent and meaning of statutory language, 'the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words.'" *State ex rel. Evans v. Brown Builders Elec. Co.,* 254 S.W.3d 31, 35 (Mo. banc 2008) (quoting *State ex rel. Wright v. Carter,* 319 S.W.2d 596, 600 (Mo. banc 1959)). "The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other." *Id*. (quoting *Bachtel v. Miller Cty. Nursing Home Dist.,* 110 S.W.3d 799, 801 (Mo. banc 2003)).

Section 130.031 sets forth, among other things, the restrictions and limitations on contributions and expenditures for committees. Subsection 2 of this statute provides, in pertinent part, that, except for expenditures from a petty cash fund, "each expenditure of more than fifty dollars . . . shall be made by check drawn on the committee's depository and signed by the committee treasurer, deputy treasurer or candidate." § 130.031.2. Subsection 2 also states, "A check

10

made payable to 'cash' shall not be made except to replenish a petty cash fund."
*Id.*

The evidence indicates that, while Stepanek, as the Council's treasurer, approved LeVota's $4,000, $950, and $360 withdrawals, the $4,000 and $360 withdrawals were not made by checks drawn on the Council's bank account and were not signed by Stepanek. Although the $950 withdrawal was made by a check drawn on the Council's bank account, the check was not signed by Stepanek and was made payable to "cash." The Council had no deputy treasurer, and it did not have a candidate, because the Council was a continuing committee. All three withdrawals were made by LeVota, a signatory on the Council's account.

The Council's statements of committee organization indicate that LeVota was the Council's chairman in 1998 and became the Council's treasurer in 2000, and Stepanek became the Council's treasurer in July 2003. LeVota testified that, when he became treasurer in 2000, he ceased being the Council's chairman, and when Stepanek became the Council's treasurer in July 2003, he was no longer the Council's treasurer. The MEC elicited from LeVota on cross-examination that he did not have any written documentation showing that he had ever resigned as the Council's chairman. Nevertheless, the AHC chose to believe LeVota's testimony that he was no longer the chairman and to give this testimony greater weight. In its order, the AHC specifically found that, "[s]ince July 3, 2003, LeVota has not held a position with the Council." We defer to the AHC's credibility determinations and the weight it accords the evidence. *Cash*, 461 S.W.3d at 60.

11

The issue, then, is whether LeVota, who was not the Council's treasurer and did not hold a position with the Council at the time he made the withdrawals in 2014 and 2015, can be held liable for violating Section 130.031.2's requirement that expenditures of over $50 in cash must be made by checks drawn on the Council's account and signed by the Council's treasurer, and Section 130.031.2's prohibition against making a check payable to "cash" except to replenish the Council's petty cash fund. Because Section 130.031.2 does not explicitly state that he can be, we must interpret the provision in the context of the whole chapter to determine what the legislature intended.

Chapter 130 is the Campaign Finance Disclosure Law. Section 130.021.1 requires that every committee have a treasurer. For a continuing committee such as the Council that does not have a deputy treasurer, Section 130.021.4(1) provides that "[c]ontributions shall not be accepted and expenditures shall not be made by a committee except by or through an official depository account and the committee treasurer[.]" The committee treasurer is responsible for maintaining accurate bookkeeping records and accounts and filing required reports, including statements of committee organization and disclosure reports detailing all of the committee's receipts and expenditures. §§ 130.036.1; 130.021.5; 130.041.1. Section 130.058 provides that the committee treasurer "is ultimately responsible for all reporting requirements pursuant to this chapter."

LeVota argues that, because the legislature placed the responsibility for opening bank accounts, accepting and distributing funds, maintaining

12

bookkeeping records, and filing reports on the committee treasurer, the legislature intended that *only* the committee treasurer can be held liable for violating the chapter's provisions regarding the committee's financial transactions, including Section 130.031.2. We disagree.

LeVota's argument overlooks language in Sections 130.072 and 130.081. Section 130.072 provides:

> Any person who knowingly accepts or makes a contribution or makes an expenditure in violation of any provision of this chapter or who knowingly conceals a contribution or expenditure by filing a false or incomplete report or by not filing a required report, in addition to or in the alternative to any other penalty imposed by this chapter, shall be held liable to the state in civil penalties in an amount equal to any such contribution or expenditure.

Similarly, Section 130.081.1 states that "Any person who purposely violates the provisions of this chapter is guilty of a class A misdemeanor." For purposes of Chapter 130, a "person" is defined as:

> [A]n individual, group of individuals, corporation, partnership, committee, proprietorship, joint venture, any department, agency, board, institution or other entity of the state or any of its political subdivisions, union, labor organization, trade or professional or business association, association, political party or any executive committee thereof, or any other club or organization however constituted or any officer or employee of such entity acting in the person's official capacity;

§ 130.011(22). Thus, under Section 130.072, any individual or entity who meets the chapter's broad definition of "person" and who knowingly accepts a contribution, makes a contribution, or makes an expenditure in violation of Chapter 130's provisions may be held liable for civil penalties, and under Section

13

130.081.1, any such individual or entity who purposely violates one of Chapter 130's provisions is guilty of a class A misdemeanor. These two statutes demonstrate the legislature's clear intent that liability for a committee's financial transactions that are made in violation of any of the chapter's provisions, including those contained in Section 130.031.2, is not limited to only committee treasurers or persons who hold a position on a committee.[7]

LeVota's $4,000, $950, and $360 withdrawals violated Section 130.031.2's requirement that an expenditure of more than $50 be made by a check drawn on the committee's account and signed by the committee treasurer. Additionally, LeVota's $950 withdrawal violated Section 130.031.2's prohibition against making a check payable to "cash" except to replenish a petty cash fund. Reading the provisions of Chapter 130 together as a whole, LeVota can be held liable for his violations of Section 130.031.2. The MEC correctly found LeVota liable on Count II, and the AHC erred in holding otherwise. Point I is granted.

In Points II and III, the MEC contends that the AHC erred in determining that LeVota's $4,000, $950, and $360 withdrawals did not violate Section 130.034's prohibition against converting committee contributions to his personal use or

---

[7] The MEC did not pursue civil penalties under Section 130.072 or refer LeVota for criminal prosecution under Section 130.081.1. Instead, the MEC chose to pursue fees under Section 105.961.4(6), which allows the MEC "to seek fees for violations in an amount not greater than one thousand dollars or double the amount involved in the violation" through reconciliation agreements or civil actions. That the MEC chose not to seek penalties under either Section 130.072 or Section 130.081.1 does not affect our determination that these statutes demonstrate a clear legislative intent to hold *anyone* who knowingly violates Chapter 130's provisions regarding a committee's financial transactions liable for such violations.

14

using them for a purpose not allowed by law. Section 130.034.1 provides that "[c]ontributions as defined in section 130.011, received by any committee shall not be converted to any personal use." Section 130.034.2 states that "[c]ontributions may be used for any purpose allowed by law including, but not limited to" eight purposes listed in the statute.

The AHC determined that the MEC failed to prove that the withdrawals were used for LeVota's personal business or for a purpose not allowed by law. Looking first at the propriety of the $4,000 and $950 withdrawals, which is the subject of the MEC's Point II, one of the eight allowable purposes for contributions under Section 130.034.2 is "[a]ny ordinary expenses incurred relating to a campaign[.]" § 130.034.2(1). In its decision, the AHC found that LeVota established that the $4,000 and $950 withdrawals were reimbursement for expenses incurred on behalf of the Council and payment for his services as a campaign consultant.

The evidence on this issue was LeVota's testimony that the CRTC hired him to provide campaign consulting services for $4,750 and that, for his services, the CRTC could have paid the Council or paid him directly. The CRTC wrote a $4,750 check to the Council. LeVota testified that he did not do work for the Council. When the MEC's counsel asked LeVota why the CRTC passed the payment for his services through the Council if he did not do work for the Council, he testified that, while the payment "should have" been to him, the CRTC "possibly wanted to have the [Council] do other work also. You have to ask them." LeVota further testified that, "in the campaign finance world, committees assign other

15

committees to do work. I don't know if the [CRTC] did not want to pay me directly, have my name on a disclosure.[8] But there is—there's no nefarious thing going on here."

LeVota testified that, because the CRTC paid the Council for his services, the Council then owed him money as a vendor. LeVota offered into evidence the invoice that he submitted to the Council seeking payment of $4,950 for his campaign efforts for the CRTC.[9] The invoice, dated November 15, 2013, stated that it was "[f]or campaign efforts relating to support for Jackson County's Ballot Question 1 on the November 5, 2013 ballot. Consisting of direction and consultation with the Translational Research Committee and the Committee for Research Treatments and Cures' efforts." LeVota testified that, with Stepanek's authorization as the Council's treasurer, his withdrawal of $4,000, which he used to purchase a cashier's check to pay his business credit card, and his withdrawal

---

[8] Concealing the identity of the recipient of a contribution or an expenditure is a violation of Section 130.031.3, which provides, in part:

> No contribution shall be made or accepted and no expenditure shall be made or incurred, directly or indirectly, in a fictitious name, in the name of another person, or by or through another person in such a manner as to conceal the identity of the actual source of the contribution or the actual recipient and purpose of the expenditure.

Anyone who knowingly makes a contribution or expenditure in violation of Section 130.031.3 or who knowingly conceals a contribution or expenditure by filing a false report is subject to a fine under Section 130.072. Whether the CRTC knowingly concealed LeVota's identity by paying the Council instead of directly paying him is not before us and we do not reach that issue.

[9] Before he was sworn in as a witness, LeVota made an opening statement to the AHC in which he indicated that he "believed" the $200 difference between his $4,750 fee for his services to the CRTC and his $4,950 invoice to the Council was for reimbursement for lunch he provided to poll workers, but he could not remember.

16

of $950 in cash constituted the Council's payment to him of his November 15, 2013 invoice.

The AHC found LeVota's testimony and the invoice he provided credible. This evidence was sufficient to support a finding that the $4,000 and $950 withdrawals were used for Section 130.034.2(1)'s allowable purpose of "[a]ny ordinary expenses incurred relating to a campaign." We find no error in the AHC's determination that LeVota did not violate Section 130.034.1 and .2 when he withdrew $4,000 and $950 as payment for the services he rendered to the CRTC's campaign.[10] Point II is denied.

With regard to the $360 withdrawal, the MEC contends in Point III that the AHC erred in stating that the MEC failed to include an allegation concerning the propriety of that expenditure in one of its affirmative defenses. In his complaint filed with the AHC, LeVota alleged that his $360 withdrawal was authorized under Section 130.034.2(7) because it was a gift to a charity, the SOS Foundation. Section 130.034.2(7) provides that one allowable purpose for which committee contributions may be used is:

> (7) To make an unconditional gift which is fully vested to any charitable, fraternal or civic organizations or other associations formed to provide for some good in the order of benevolence, if such candidate, former candidate or holder of elective office or such person's immediate family gain no direct financial benefit from the unconditional gift[.]

---

[10] Even though the payments of $4,000 and $950 to LeVota were for an allowable purpose, the manner in which they were paid to him was a violation of Section 130.031.2, as addressed in Point I. The failure to properly report the payments was a violation by the Council and Stepanek and was addressed in the MEC's complaint against them.

17

In its second affirmative defense to this claim, the MEC alleged only that the $360 withdrawal was not reported by the Council as having been made for any allowable purpose and that LeVota failed to use those funds for an allowable purpose. During the hearing, the MEC presented evidence that the $360 donation to the SOS Foundation was made before the foundation was incorporated. In its order, the AHC stated that the MEC failed to include, as part of its second affirmative defense, its allegation that the $360 donation to the SOS Foundation preceded the foundation's formation as a charity. On appeal, the MEC argues that it did not need to include this allegation because affirmative defenses are only required to assert new issues and not to state defenses made to pleaded allegations.

We need not decide whether the AHC erred in indicating that the MEC needed to include its allegation as part of its second affirmative defense. After stating that the MEC failed to include this allegation as part of its second affirmative defense, the AHC found that the MEC failed to meet its burden of proving the allegation, stating, "Nonetheless, LeVota produced a receipt from the charity, and [the] MEC cites to no evidence in the record in support of this allegation to sustain its burden of proof."

Looking at the evidence on this issue, LeVota testified that, on January 17, 2014, he withdrew $360 from the Council's bank account with Stepanek's authorization. He asked the Council for this money to give to the SOS Foundation, a charitable organization he co-founded, which collects "money from business

18

people, and we go out the week before Christmas and go to thrift stores, McDonald's, grocery stores, and we hand out money." LeVota offered into evidence the SOS Foundation's "Official Donation Receipt For Income Tax Purposes," issued on January 30, 2014, showing a $360 cash gift from the Council to the foundation on January 17, 2014.

In response, the MEC offered a copy of the SOS Foundation's webpage and an online news article, dated December 16, 2015, which described the SOS Foundation as a "brand new local nonprofit." The MEC also offered certified records from the Secretary of State's office showing that the SOS Foundation was incorporated as a nonprofit public corporation on September 16, 2016. Based on this evidence, the MEC argues that the SOS Foundation was not a charitable entity at the time LeVota withdrew the $360 and, therefore, the Council's $360 donation to the foundation was not for an allowable purpose.

Section 130.034.2(7) allows a committee to make an unconditional gift to "charitable, fraternal or civic organizations or other associations formed to provide for some good in the order of benevolence." LeVota's testimony and the SOS Foundation's donation receipt constituted sufficient evidence that the SOS Foundation was a formed charitable organization when the Council made the $360 donation. The AHC chose to believe this evidence and accord it greater weight than the MEC's evidence, and we defer to the AHC's decision to do so. *Cash*, 461

S.W.3d at 60.  The AHC did not err in finding that the $360 withdrawal was for an allowable purpose.[11]  Point III is denied.

In Point IV, the MEC contends the AHC erred in stating that it was reviewing the MEC's "$10,000 fee."  The MEC issued two civil fees of $10,000 each, for a total of $20,000.  Throughout its order, however, the AHC stated that the MEC issued an order assessing a fee of only $10,000 against LeVota.

We have determined that LeVota is liable for violating Section 130.031.2 but is not liable for violating Section 130.034.  Because we are directing that the case be remanded to the MEC to order the appropriate penalty for LeVota's violation of Section 130.031.2, this point is moot.  Point IV is denied.

### CONCLUSION

The AHC's decision finding LeVota not liable under Count III for violating Section 130.034 is affirmed.  The AHC's decision finding LeVota not liable under Count II for violating Section 130.031.2 is reversed.  We remand the case to the circuit court with directions to remand the case to the AHC.  The AHC is directed to remand the case to the MEC.  The MEC is directed to order the appropriate penalty for LeVota's violation of Section 130.031.2.

---

[11] Even though the $360 withdrawal was for an allowable purpose, the manner in which the withdrawal was made was a violation of Section 130.031.2, as addressed in Point I.  The failure to properly report the withdrawal was a violation by the Council and Stepanek and was addressed in the MEC's complaint against them.

20

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.