

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| MICHAEL CASH,<br>                         Appellant,<br>v.<br><br>MISSOURI DEPARTMENT OF<br>REVENUE; SCOTT LEARY,<br>Administrator,<br>                         Respondent. | )<br>)<br>)<br>)<br>)  **WD77199**<br>)<br>)  **FILED: May 12, 2015**<br>)<br>)<br>) |

### Appeal from the Circuit Court of Cole County
### The Honorable Patricia S. Joyce, Judge

### Before Division Four: Alok Ahuja, C.J., James E. Welsh, J. and
### Patrick W. Campbell, Sp.J.

Michael Cash was a tax auditor with the Department of Revenue (the "DOR" or "Department"). The DOR terminated Cash's employment on the basis that he had failed to comply with the Department's document handling policies during an audit. Cash appealed to the Administrative Hearing Commission (the "AHC" or "Commission"), contending that his termination was "not for the good of the service." The Commission agreed, and reinstated Cash to his position. The Circuit Court of Cole County reversed the AHC's decision. This appeal follows. We conclude that substantial evidence supported the Commission's determination that Cash did not commit misconduct, and that his termination was therefore not for the good of the service. We accordingly reverse the circuit court's judgment, and affirm the decision of the AHC.

**Factual Background**

Cash was employed as an auditor with the Department for almost twenty-seven years. Beginning in March 2010, Cash and fellow tax auditor Mary Winkert conducted an on-site audit at UMB Bank's Kansas City offices. UMB employee Jennifer Parker served as their on-site liaison.

UMB provided Cash and Winkert with access to a secure room in which they could review confidential UMB documents. Parker orally advised Cash and Winkert that they should flag any documents they wished to have copied, and UMB would copy the documents for them. Although there was no internet access in the room in which Cash and Winkert were working, the room contained an operable fax machine.

On April 7, 2010, Cash attempted to use the fax machine to transmit a UMB document back to his office. The document was a credit-card statement; because of the large amount of data contained in the statement, Cash explained that it would have been helpful for him to have access to the statement at his office. Cash aborted the fax transmission by pulling the document out of the fax machine, and confirmed with a secretary at his DOR office that no document had been received. Cash instead flagged the document for copying and continued to work.

A UMB employee later found a report on the fax machine which indicated that a fax transmission had been attempted. Both Parker and fellow UMB employee Richard Hess spoke to Cash about the attempted fax. Cash admitted that he had attempted to fax a document back to his office, but told Parker and Hess that no fax had gone through. Nevertheless, as a result of UMB's concern over the incident, UMB halted the audit and escorted Cash and Winkert from the building. Cash and Winkert reported the incident to their supervisors, including area manager

Cecille Swan. Parker likewise spoke with Swan. Parker testified that based on the fax incident, Cash would not have been allowed to return to UMB's offices to continue the audit.

On April 19, 2010, the Department notified Cash that he was being terminated. In Cash's termination letter, DOR Field Compliance Bureau Administrator Scott Leary stated that

> [t]his action is being taken because, during the course of an audit on April 7, 2010, you failed to comply with basic audit performance expectations and with the express instructions of the taxpayer regarding the safeguarding of confidential records. The taxpayer had clearly communicated its procedure for requesting and providing copies of records being audited. However, you attempted to circumvent such procedure by using the taxpayer's facsimile machine to transmit a copy of the taxpayer's credit card statement to the Field Compliance Bureau Office without the taxpayer's knowledge or consent.

> Your conduct is such that the termination of your employment is required in the interests of efficient administration and the good of the Department will be served thereby. Effective immediately, you are being placed on Administrative Leave with Pay pending the termination of your employment.

Cash appealed his termination. The Commission heard live testimony from UMB employees Parker and Hess; DOR employees Winkert, Swan, and Leary; and Cash. DOR employee Randall Merk also submitted an affidavit to the AHC. Following the hearing, the AHC issued a Decision which reinstated Cash to his position. The Department appealed the AHC's Decision to the Cole County Circuit Court. The circuit court reversed, finding that the AHC's decision was "arbitrary, unlawful, unreasonable and [was] not supported by substantial and competent evidence on the record as a whole."

Cash appealed the circuit court's decision to this Court. Because the Department was the party aggrieved by the agency decision, it acted as the appellant in this appeal pursuant to Supreme Court Rule 84.05(e) and this Court's Rule XXXV.

### Standard of review

> On an appeal from the trial court's review of an AHC decision, we review the decision of the AHC, not the judgment of the trial court. The AHC's decision will be upheld unless it is not supported by competent and substantial evidence

3

upon the whole record; it is arbitrary, capricious, or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized by law or in violation of constitutional provisions.

In determining whether a decision is supported by competent and substantial evidence, we review the record as a whole and determine whether the AHC's decision is against the overwhelming weight of the evidence. Though we do not view the AHC's factual findings in the light most favorable to the decision, we still must defer to its credibility findings, as the AHC is the sole judge of the credibility of witnesses and the weight and value to give to the evidence. We review the AHC's conclusions on the interpretation and application of the law, however, *de novo.*

*Faenger v. Bach*, 442 S.W.3d 180, 185-86 (Mo. App. W.D. 2014) (citations and internal

quotation marks omitted).

## Analysis

The Department of Revenue is a non-merit agency,[1] and Cash was accordingly a non-

merit employee. Section 36.390, RSMo provides:

6. The provisions for appeals provided in subsection 5 of this section for dismissals of regular merit employees may be adopted by nonmerit agencies of the state for any or all employees of such agencies.

7. Agencies not adopting the provisions for appeals provided in subsection 5 of this section shall adopt dismissal procedures substantially similar to those provided for merit employees. . . .

The parties agree that DOR has not adopted its own appeal procedures for employees in

Cash's position, and it is therefore deemed to have adopted the procedures of § 36.390(5),

RSMo. *State ex rel. Lohman v. Personnel Advisory Bd.*, 948 S.W.2d 701, 704-05 (Mo. App.

W.D. 1997). Those appeal provisions provide that

Any regular employee who is dismissed or involuntarily demoted for cause or suspended for more than five working days may appeal in writing to the administrative hearing commission within thirty days after the effective date thereof, setting forth in substance the employee's reasons for claiming that the

---

[1] *See* § 36.030.1, RSMo (listing agencies in which "[a] system of personnel administration based on merit principles" is established); *State ex rel. Lohman v. Personnel Advisory Bd.*, 948 S.W.2d 701, 703-04 (Mo. App. W.D. 1997).

4

dismissal, suspension or demotion was for political, religious, or racial reasons, or not for the good of the service.

§ 36.390(5). An agency's adoption of § 36.390(5)'s appeal procedures for non-merit employees means that those employees are protected from a termination which is contrary to the common law, or was for "political, religious, or racial reasons, or not for the good of the service." *Bowen v. Missouri Dep't of Conservation*, 46 S.W.3d 1, 11 (Mo. App. W.D. 2001).

Cash challenged his termination on the ground that it was "not for the good of the service.[2]

**I.**

The AHC's Decision found that although Cash was a non-merit employee, he had a substantive right to his job, and therefore that the Department bore the burden to prove that Cash's dismissal was "for the good of the service." The Department's first two Points challenge these conclusions. It is unnecessary for us to address these issues, however, because the AHC's Decision did not depend on its allocation of the burden of proof.

Although the AHC's Decision explicitly placed the burden of proof on the DOR, the Decision observed that,

> [a]lthough Cash does not have the burden of proof, he may show that his dismissal was not for the good of the service by proving the *absence of* "some personal misconduct or fact that renders the employee's further employment harmful to the public interest" and that his conduct was *not* "of such a serious nature that dismissal [was] required" . . . .

(quoting *Missouri Veterans' Comm'n v. Vanderhook*, 290 S.W.3d 115, 119 (Mo. App. W.D. 2009)).

The AHC's Decision concluded that Cash's attempted faxing of a confidential UMB document back to his office did not violate any Department policy, or UMB directive. In

---

[2] Cash initially contended that his employment was terminated for prohibited political reasons. The AHC determined that Cash had abandoned that claim, and he does not raise it on appeal.

5

reaching this conclusion, the Decision expressly stated that the Commission found the testimony of Cash and Winkert to be credible, found Parker's testimony not to be credible, and found the testimony of Leary and Swan to be credible only "in part," to the extent their testimony established that, "absent an agreement to the contrary, auditors could use a fax machine to send documents back to their office." Based on its credibility determinations, the AHC found that Parker "did not explicitly tell Cash he could not use the fax machine or fax documents," and that "[t]he Department allows auditors to fax information related to its audits to the Department." The AHC concluded that Cash had not engaged in any personal misconduct, but instead that he "was terminated for doing his job."

The AHC's Decision found that the evidence affirmatively established that Cash had not violated any Department policy or UMB directive, and that his dismissal was therefore not for the good of the service. In these circumstances, any error concerning the allocation of the burden of proof is harmless. We have previously held that an erroneous statement regarding the allocation of the burden of proof does not warrant reversal where the party who properly bears the burden of proof meets that burden. *See Cent. Cnty. Emergency 911 v. Int'l Ass'n of Firefighters Local 2665*, 967 S.W.2d 696, 699 (Mo. App. W.D. 1998). This is such a case; we reject the DOR's first two Points without further discussion.

## II.

In its third Point, the Department argues that the AHC's finding that Cash's termination was not for the good of the service was unsupported by competent and substantial evidence.

"'Although not defined by the statutes, the standard "for the good of the service" . . . requires a decision by the appointing authority that the employee's conduct is of such a serious nature that dismissal is required rather than some other form of discipline.'" *McSwain v. Morton*, 452 S.W.3d 199, 209 (Mo. App. W.D. 2014) (quoting *Lombardi v. Dunlap*, 103 S.W.3d

6

786, 791 (Mo. App. W.D. 2003)); *see also Faenger v. Bach*, 442 S.W.3d 180, 187-88 (Mo. App. W.D. 2014); *Faenger v. Wofford*, 442 S.W.3d 190, 196-98 (Mo. App. W.D. 2014).

In this case, from its termination letter through its appellate briefing, the Department has contended that Cash's termination was "for the good of the service" because Cash engaged in personal misconduct by "fail[ing] to comply with basic audit performance expectations and with the express instructions of the taxpayer."[3]

As noted above, we are bound by the AHC's credibility determinations. Therefore, we examine whether the evidence found credible by the AHC could support its determination that Cash's termination was not for the good of the service.

DOR first argues that the AHC's Decision ignores evidence that Cash violated UMB's "express directives." However, while Parker testified that she explicitly told Cash and Winkert that they were not permitted to use the fax machine, the AHC expressly found "Parker's testimony to be of little credibility," and her testimony on this point was contradicted by both Cash and Winkert. In addition, while UMB may have told Cash and Winkert that they were not permitted to make photocopies of UMB documents, the testimony of both Cash and Winkert indicates that they did not interpret Parker's instructions as prohibiting the faxing of documents.

---

[3]     In two recent decisions this Court has emphasized that personal misconduct is not necessary to establish that an employee's termination is "for the good of the service." *Faenger v. Bach*, 442 S.W.3d 180, 187 n.11 (Mo. App. W.D. 2014); *Faenger v. Wofford*, 442 S.W.3d 190, 196 n.9 (Mo. App. W.D. 2014). We explained that earlier decisions, which suggested that a termination could *only* be "for the good of the service" if the employee had engaged in misconduct, "improperly conflat[ed] the concepts of 'cause' and 'good of the service.'" *Id.* We have continued to recognize, however, that "conduct that constitutes cause can be of such a serious nature that it readily satisfies the good of the service requirement." *McSwain v. Morton*, 452 S.W.3d 199, 210 n.8 (Mo. App. W.D. 2014). In this case, the Department's position throughout has been that Cash's termination was for the good of the service because the Department had cause to terminate him based on his violation of Department and UMB policies and procedures. The AHC properly determined the legality of Cash's termination based on the reasons offered by the Department to justify it.

And, while there was no internet service in the room in which Cash and Winkert were working, the room contained a working fax machine.

The Department next argues that the AHC's Decision ignores the evidence concerning the Department's policies for document handling. Those policies provide that auditors should come to an agreement with taxpayers concerning "[h]ow the [taxpayer's] records should be handled during the review process," and that auditors should ask the taxpayer whether records can be copied, and should never "[c]opy taxpayer records without taxpayer pre-authorization." As discussed above, it is evident from Cash and Winkert's testimony that they viewed copying and faxing of taxpayer documents as two very different actions. Therefore, while Department policies may have prohibited document *copying* without taxpayer consent, the evidence supported the AHC's determination that those policies did not directly address the *faxing* of documents. Moreover, Cash testified that he was told by Swan that he could fax documents at any time, and both Cash and Winkert testified that they were aware of multiple instances in which DOR auditors had faxed documents back to the office. Indeed, even Swan acknowledged on cross-examination that she had told Cash "that he had the right to fax a copy at any time." While Swan qualified that statement on redirect examination, by testifying that faxing was only permissible with taxpayer consent, the AHC evidently believed her testimony on cross-examination, but not her later attempt to limit that testimony. Substantial evidence supported the AHC's determination that Cash did not violated any DOR policy.

The DOR next argues that the AHC's Decision ignores Cash's admissions that he attempted to fax a UMB document, and never asked for permission to use the fax machine. The Department also emphasizes that, in an e-mail explaining his actions which Cash sent to Swan two days after the incident, Cash repeatedly referred to his attempt to fax the document as "a

8

mistake." As detailed above, however, Cash testified that he was told by his supervisor that it was acceptable to fax documents to the DOR's offices without taxpayer authorization. Cash's attempt to fax a document, without UMB's prior consent, was consistent with the instructions he had received from Swan. Cash's characterization of the attempted fax as "a mistake," following UMB's adverse reaction, is not necessarily inconsistent with his claim that he had acted consistently with Department policy.

Finally, the Department argues that Cash's position – that "a lack of an express directive against faxing equates [to] authority to fax" – "goes against basic logic." We disagree. Cash attempted to fax a single UMB document to himself at DOR's offices. UMB had authorized Cash to have access to the document, and made him a copy of the document without objection. The document was a credit-card statement; Cash told Swan that he needed to extract a large amount of information from the statement, and that it was simply more convenient and efficient to fax the document back to his office so that he could further review it. There is nothing inherently implausible about Cash's claim that it was permissible for him to fax the document to himself, to facilitate his audit work, without obtaining express taxpayer authorization.

Based on the evidence found credible by the AHC, its conclusion that Cash's termination was not for the good of the service was supported by competent and substantial evidence.

### Conclusion

We reverse the circuit court's decision and affirm the AHC's Decision reinstating Cash to his previous position at the Department of Revenue.

_____
Alok Ahuja, Chief Judge

All concur.

9