IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 XINSHENG GAN, )
 )
 Appellant, )
 WD84241
 v. )
 )
 OPINION FILED:
 )
 January 25, 2022
 PENNY SCHROCK, )
 )
 Respondent. )

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Patricia S. Joyce, Judge

 Before Division One: W. Douglas Thomson, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 Xinsheng Gan appeals from the circuit court’s affirmation of an Administrative Hearing

Commission (AHC) decision awarding some, but not all, of the monetary relief Gan requested

following a hearing to determine the amount of back pay he was owed following reinstatement to

his job with the State of Missouri after an improper dismissal. Gan raises four points on appeal.

First, he argues that the AHC award was erroneous insofar as it failed to include (1) back pay for

the entire six years between dismissal and reinstatement, (2) the difference between the cost paid

by Gan for medical insurance and what he would have paid under the State’s plan, (3) a loss of

value for future social security benefits, and (4) the value of all of the annual leave that Gan would
have acquired absent his dismissal. Second, Gan argues that the award improperly failed to include

both pre- and post-judgment interest. Third, Gan argues that the award should have included

additional compensation for the adverse tax consequences he would suffer from a large lump-sum

payment. And, finally, Gan argues that he was improperly rehired, rather than reinstated, to his

original position. Finding no error, we affirm.

 Background

 Gan worked as a Research Analyst III with the Missouri Department of Social Services,

Division of Finance and Administrative Services, for six years until he was dismissed in February

2013. Schrock v. Gan, 494 S.W.3d 631, 633 (Mo. App. W.D. 2016) (Gan I). Gan, a merit system

employee, appealed his dismissal to the AHC, and the AHC initially determined that Gan’s

dismissal was not for the good of the service and ordered that he be reinstated. 1 Id. The

Department sought review in the circuit court, and the circuit court reversed the AHC’s decision,

 1
 Gan brought his action under the State Personnel Law, § 36.010 et seq., governing employment of State
employees. With respect to “regular employees” (also known as merit employees), they may be dismissed for cause
by “[a]n appointing authority . . . when he [or she] considers that such action is required in the interests of efficient
administration and that the good of the service will be served thereby.” Mo. Rev. Stat. § 36.380 (2013). The State
Personnel Law provides to the dismissed employee a right of appeal to the administrative hearing commission (AHC).
Id. A person seeking an appeal before the AHC “may appeal in writing . . . within thirty days after the effective date
[of the adverse employment decision], setting forth in substance the employee’s reasons for claiming that the
dismissal, suspension or demotion was for political, religious, or racial reasons, or not for the good of the service.”
§ 36.390.5 (2013). Hearings before the AHC under § 36.390.5 are contested cases as defined in Chapter 536. Id.
§ 36.390.8. Following the hearing, the AHC may “(1) [o]rder the reinstatement of the employee to the employee’s
former position; [or] (2) [s]ustain the dismissal of such employee . . . .” § 621.075.2 (2013). If the AHC orders
reinstatement, then “[a]fter . . . all parties have let the time for appeal lapse or have filed an appeal and that appeal
process has become final and the order of reinstatement has been affirmed, the administrative hearing commission
shall commence a separate action to determine the date of reinstatement and the amount of back pay owed to the
employee.” § 621.075.3.
 If the person believes the termination was “because of such individual’s race, color, religion, national origin,
sex, ancestry, age or disability,” that person may choose to file a complaint under the Missouri Human Rights Act
(MHRA) with the Missouri Commission on Human Rights. §§ 213.055.1(1)(a), 213.075. Though both statutes cover
dismissals based upon improper considerations, they have different timelines and different remedies available. While
the sole remedies available under the State Personnel Law are reinstatement and back pay, the remedies available
under the MHRA include injunctive relief, temporary restraining orders, actual damages, and punitive damages.
§ 213.111.2.
 Here, Gan chose to proceed under the State Personnel Law, which provides more limited relief than the
MHRA.

 2
finding that the AHC failed to use a proper analysis, and the court remanded the matter back to the

AHC to reconsider under the proper analysis. Id. Gan appealed the circuit court’s decision to this

court, and we dismissed the appeal for lack of a final judgment and remanded the matter to the

AHC for final determination. Id. at 637.

 In March 2017, the AHC adopted its previous findings of fact, found additional facts, and

concluded that Gan’s dismissal was not for the good of the service and reinstated him to his

position as Research Analyst III. Schrock v. Gan, 563 S.W.3d 127, 129 (Mo. App. W.D. 2018)

(Gan II). The Department again sought review in the circuit court, and the circuit court again

reversed the AHC’s decision, finding that the AHC exceeded its authority and misapplied the law

and that its determination was not supported by competent and substantial evidence upon the whole

record. Id. Gan again appealed to this court, and we held that there was no error in the AHC’s

determination that the Department failed to show that Gan’s dismissal was for the good of the

service. Id. at 136-37. Therefore, we reversed the decision of the circuit court, affirmed the

decision of the AHC reinstating Gan to his former position, and remanded the matter to the AHC

for determination of attorney’s fees and costs. Id. at 137.

 On February 14, 2019, the AHC reopened the matter to determine Gan’s date of

reinstatement and the amount of back pay to which he was entitled. The AHC held a hearing on

July 24, 2019, wherein it received documentary evidence and testimony from Penny Schrock, the

former Appointing Authority for the Department; Dawn Plybon, the current Appointing Authority

for the Department; James Brinkmann, a vocational rehabilitation specialist; and Gan. The parties

agreed that Gan’s dismissal date was February 1, 2013, and that he was reemployed as a Research

Analyst III with the Department on January 14, 2019. They also agreed that the total wages Gan

would have received for the nearly six years he was unemployed was $239,399.19. The

 3
Department argued, however, that Gan was not entitled to the full amount as a result of his failure

to mitigate his damages by working during the period between dismissal and reemployment. Gan

argued that he was entitled to not only the full amount of lost wages but also additional

compensation for (1) the difference in medical insurance premiums paid and those he would have

paid under the State’s medical plan (MCHCP), (2) the loss in value of social security benefits,

(3) the value of all lost annual leave, and (4) the value of his lost time in the Missouri State

Employees Retirement System (MOSERS).

 On December 20, 2019, the AHC issued its decision, granting Gan $92,631.52 in back pay

without interest, representing lost wages for two years and five months, from February 1, 2013,

through June 30, 2015 (the date by which the AHC determined Gan could have found reasonable

employment but failed to continue seeking it); 710 hours of reinstated sick leave; reinstatement of

annual leave up to 240 hours; and service credit with MOSERS backdated to February 1, 2013.

The AHC denied Gan’s request for reimbursed health insurance costs, lost value of social security

benefits, and lost tax credit opportunities. Gan sought review in the circuit court. The circuit court

affirmed the AHC’s decision. Gan appeals.

 Standard of Review

 On an appeal from judicial review of an AHC decision, “we review the decision of the

AHC [and] not the judgment of the trial court.” Gan II, 563 S.W.3d at 130 (quoting Cash v. Mo.

Dep’t of Revenue, 461 S.W.3d 57, 60 (Mo. App. W.D. 2015)). We will uphold the AHC’s decision

“unless it is not supported by competent and substantial evidence upon the whole record; it is

arbitrary, capricious, or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized

by law or in violation of constitutional provisions.” Id. (quoting Cash, 461 S.W.3d at 60).

 4
 “In determining whether a decision is supported by competent and substantial evidence,

we review the record as a whole and determine whether the AHC’s decision is against the

overwhelming weight of the evidence.” Id. (quoting Cash, 461 S.W.3d at 60). Because “the AHC

is the sole judge of the credibility of witnesses and the weight and value to give to the evidence,”

we will “defer to its credibility findings.” Id. (quoting Cash, 461 S.W.3d at 60). “We review the

AHC’s conclusions on the interpretation and application of the law, however, de novo.” Id.

(quoting Cash, 461 S.W.3d at 60).

 Analysis

 Gan raises four points on appeal. In his first point, he argues that the AHC erred in failing

to include in its back-pay award (1) nearly four more years’ worth of past wages; (2) the difference

in cost of medical insurance premiums he paid; (3) the lost value of social security benefits; and

(4) additional value for annual leave. In his second point, he argues that the AHC award should

have included both pre- and post-judgment interest. In his third point, he argues that the award

should have included compensation for the tax consequences Gan would suffer from a lump-sum

payment. And, in his final point, Gan argues that the AHC erred in concluding that he was

reinstated, rather than rehired, by the Department.

 I. The AHC did not err in applying the rule of avoidable consequences to limit Gan’s
 back-pay award.

 In Point I, Gan argues that the AHC erred in its determination that he was not entitled to

all the relief he requested in his back-pay award because the AHC’s decision to apply the rule of

avoidable consequences to limit his back-pay award was arbitrary and capricious.2 We disagree.

 2
 Each of Gan’s Points I-III is multifarious insofar as it charges that the AHC’s decision “was arbitrary,
capricious or unreasonable, against the weight of the evidence, involved an abuse of discretion, or was unauthorized
by law.” “These are[, however,] distinct claims.” Ivie v. Smith, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). As such,
“[t]hey must appear in separate points relied on in the appellant’s brief to be preserved for appellate review.” Id.
Lumping them all together in a single point relied on violates Rule 84.04(d). Id.

 5
 Section 621.075.33 provides that, following an order of reinstatement and the conclusion

of any appeals resulting in affirmance of the order of reinstatement, “the [AHC] shall commence

a separate action to determine the date of reinstatement and the amount of back pay owed to the

employee.” “Back pay is calculated based upon the difference between the value of the

compensation the plaintiff would have been entitled to had he remained employed by the defendant

and whatever wages he earned during the relevant period.”4 Pitcher v. Centene Corp., 602 S.W.3d

216, 225 n.2 (Mo. App. W.D. 2020) (quoting Clark v. Matthews Int’l Corp., 639 F.3d 391, 396

(8th Cir. 2011)).

 Here, the AHC awarded Gan $92,631.52 in lost wages, 240 hours in annual leave, 710

hours in sick leave, and a reinstatement date of February 1, 2013, for purposes of calculating

service credit with MOSERS. Gan first argues that he should have received the full $239,399.19,

representing his lost pay for the entire six years he was separated from the Department. We

disagree.

 “An improperly dismissed public employee is entitled upon reinstatement to recover his

lost back pay from the date of termination to the date of his reinstatement.” Schulze v. Erickson,

17 S.W.3d 588, 591 (Mo. App. W.D. 2000) (quoting Gamble v. Hoffman, 695 S.W.2d 503, 509

(Mo. App. W.D. 1985)). “However, under the rule of avoidable consequences, the amount of back

pay must be offset by such sums the employee has earned or could have earned from other

 Likewise, Gan’s Point I, specifically, raises four distinct claims of error in his back-pay award:
(1) insufficient wages; (2) insufficient annual leave hours; (3) lack of social security benefits; and (4) lack of medical
insurance premium reimbursements. “Multifarious points on appeal preserve nothing for appellate review and are
grounds for dismissal.” Fisher v. Slinger, 634 S.W.3d 704, 707 (Mo. App. W.D. 2021). Nevertheless, because we
prefer to reach the merits where we can do so without acting as a party’s counsel, id., we will gratuitously address the
merits of Gan’s claims.
 3
 All statutory references are to the Revised Statutes of Missouri (Cum. Supp. 2013), unless otherwise noted.
 4
 “Generally, the ‘relevant period’ runs from the date of termination until the date of reinstatement or
judgment.” Pitcher v. Centene Corp., 602 S.W.3d 216, 225 n.2 (Mo. App. W.D. 2020) (quoting Clark v. Matthews
Int’l Corp., 639 F.3d 391, 396 (8th Cir. 2011)).

 6
employment[.]” Id. (citing Wolf v. Mo. State Training Sch. for Boys, 517 S.W.2d 138, 144-45

(Mo. banc 1974)). “Those offsets are to be determined by an administrative evidentiary hearing

for that purpose in the event the employee is reinstated.” Gamble, 695 S.W.2d at 509. “[T]he

burden of proof on this issue [of offsets] rests with the [employer].” Shaughnessy v. Mark Twain

State Bank, 715 S.W.2d 944, 954 (Mo. App. E.D. 1986).

 At the hearing, Gan testified that he stopped seeking jobs after the June 4, 2014 AHC

decision ordering his reinstatement and, instead, began focusing on managing rental property that

he owned with his wife.5 The Department presented evidence that, between 2013 and 2019, there

were approximately 219 jobs in the Jefferson City and Columbia areas for which Gan was qualified

and that had a salary range comparable to his former position. The Department also presented

evidence that, though Gan initially had his name on the State’s merit registry, once his registration

expired in September of 2013, Gan failed to reapply to the registry.6 From this evidence, the AHC

concluded that Gan effectively ceased his efforts to gain employment as of June 4, 2014, and it

determined that Gan could have found comparable employment no later than June 30, 2015.

Therefore, it awarded him the amount in wages he would have earned between his dismissal date

of February 1, 2013, through June 30, 2015. There was competent and substantial evidence to

support the AHC’s finding that Gan could have obtained comparable employment but failed to

 5
 Gan provides us with no authority suggesting that the rule of avoidable consequences is in any way limited
by the procedural posture of the case. On the contrary, the duty to mitigate appears to be a continuing one until a final
determination as to the propriety of the original discharge: “Under th[e] rule [of avoidable consequences], the
back[-]pay award must be offset by whatever amounts the wrongfully discharged employee has earned or by
reasonable diligence could have earned during the period of his wrongful discharge.” DeSilva v. Dir., Div. of Aging,
Dep’t of Soc. Servs., 714 S.W.2d 690, 692 (Mo. App. E.D. 1986) (emphasis added).
 6
 Shrock testified that the registry was
 an online system . . . , where you created an account, you went in and selected classifications that you believed
 you were qualified for. You went in and you answered the questions regarding your experience and
 education. Under that, based on those answers, then it calculated a score for you and placed you on the
 appropriate registry. If you didn’t have the qualifications or the experience, then it would tell you that you
 did not qualify.

 7
seek it; therefore, his back-pay award was properly limited to only that time during which he was

actively seeking other employment opportunities.

 Gan next argues that the AHC erred in awarding him only 240 hours of annual leave.

Again, we disagree. Full-time State employees can accrue annual leave in different amounts based

upon their years of service. 1 C.S.R. § 20-5.020(1)(A) (2013). Full-time employees with fewer

than ten years of service earn five hours of annual leave per semi-monthly pay period, while

full-time employees with ten to fewer than fifteen years of service earn six hours of annual leave

per semi-monthly pay period. Id. § 20-5.020(1)(A)1. “The maximum allowable accumulation of

annual leave shall not exceed forty-eight (48) times an employee’s current full-time semi-monthly

accrual rate.” Id. § 20-5.020(1)(D). This means, essentially, that a full-time employee with fewer

than ten years of service may carry a maximum of 240 hours of annual leave at any given time,

and a full-time employee with at least ten, but fewer than fifteen, years of service may carry a

maximum of 288 hours of annual leave.

 At the time of his dismissal, Gan had worked for the Department for six years and was

earning five hours of annual leave per semi-monthly pay period. Had he not been dismissed, he

would have begun earning six hours per semi-monthly pay period sometime in 2017. At the

hearing, the Department indicated that, if the AHC set Gan’s reinstatement date as February 1,

2013, the Department would automatically credit him with 240 hours of annual leave and 710

hours of sick leave. The AHC found these amounts to be reasonable and rejected Gan’s argument

that he should receive more on the ground that the evidence indicated that Gan typically did not

accumulate his leave but instead chose to use it for travel. Gan now argues that the AHC’s decision

with respect to annual leave was erroneous for the same reasons as its decision to limit his wage

recovery to two years and five months. Having determined that the AHC did not err in its

 8
determination to limit Gan’s wage recovery, we hold that the AHC likewise did not err in limiting

his annual leave recovery.7

 Gan raises no challenge to either the hours of sick leave or the MOSERS service credit

awarded. He does, however, complain that the AHC refused to award him an amount he claims

to be equal to lost social security benefits resulting from him being unemployed for six years, as

well as the difference in value of medical insurance premiums he paid while unemployed versus

those he would have paid under the State’s plan.

 There are two flaws in his argument with respect to social security benefits: (1) the amount

he claimed he should receive was based upon the entire six-year separation from the Department;

and (2) his argument supporting his claim to lost benefits is based upon an incorrect interpretation

of law. First, as we discussed, supra, Gan is not entitled to any award for the time during his

separation from the Department for which he failed to seek alternate employment, and he failed to

present the AHC with any evidence as to the amount of lost social security benefits for a shorter

time frame. Although the AHC’s decision noted that Gan presented evidence establishing the

value of his lost entitlement to social security benefits “due to him earning no wages during his

period of separation,” the Commission specifically noted that “[n]o evidence was introduced as to

how a back-pay award may [affect]” Gan’s lost-social-security-benefits calculation. Thus, we

cannot say that the AHC erred in denying a claim upon which it was presented insufficient

evidence. Second, Gan’s claim with respect to lost social security benefits is premised on the

notion that he cannot recoup benefits for the years he was not working because a back-pay award

would be credited in the year it was paid and only to the extent that the award, in combination with

 7
 It appears that the AHC found the 240-hour limit applicable over the 288-hour limit because of Gan’s
decision to cease seeking comparable employment after the June 4, 2014 order that he be reinstated. At that time, the
maximum amount of annual leave he would have been allowed to accumulate was 240 hours.

 9
his current salary did not exceed the maximum for calculation of social security. That does not

appear, however, to be the law. See United States v. Cleveland Indians Baseball Co., 532 U.S.

200, 218 n.14 (2001) (noting that “The SSA has interpreted its regulation governing ‘[b]ack pay

under a statute,’ to allow the employee to choose whether to allocate the back[ ]pay to the year it

is paid or to the year it should have been paid.”) (internal citation omitted). Therefore, we cannot

say the AHC erred in denying Gan’s request for lost social security benefits.

 With respect to Gan’s claim that his award should have included the difference in value of

medical insurance premiums he paid while unemployed versus those he would have paid under

the State’s plan, we again cannot say the AHC erred. The AHC rejected this claim on the ground

that Gan introduced no evidence showing that the medical insurance plan he purchased during the

period of separation provided the same coverage and benefits as the plan he would have had had

he not been terminated. Gan argues that he was not required to present this kind of evidence, given

that the Department’s contribution to Gan’s medical insurance premiums would have exceeded

the amount he is now seeking. But this argument is comparing proverbial apples to oranges. He

seeks to recover the difference between what he paid for premiums during separation and what he

would have paid if he had not been wrongfully terminated; thus, it is the amount of his

contributions—not the Department’s—that is the relevant comparison. And what the Department

would have paid is irrelevant. Although Gan’s brief claims that the evidence established that the

health-insurance plan he purchased during his separation “was similar to his PPO600/UMR plan

with MCHCP,” that is simply not the case; the cited testimony and exhibit establish merely that

Gan purchased medical insurance during the period of his separation and the amount he paid for

that insurance. The cited evidence provides no information concerning the terms of the other

insurance Gan purchased or how that coverage compared to what he would have received through

 10
ongoing State employment. Without evidence that the coverage he obtained was equivalent to the

coverage he had before termination, there is simply no basis for the AHC to have awarded him

this amount.

 The AHC “is purely a ‘creature of statute’ which has ‘no more and no less authority than

that granted it by the legislature.’” Shaw v. Admin. Hearing Comm’n, 537 S.W.3d 881, 886 (Mo.

App. W.D. 2018) (quoting State Bd. of Registration for the Healing Arts v. Masters, 512 S.W.2d

150, 161 (Mo. App. 1974)); see also Atwell v. Fitzsimmons, 452 S.W.3d 670, 676 (Mo. App. W.D.

2014) (same). Following an order of reinstatement, § 621.075.3 allows the AHC only to

“determine the date of reinstatement and the amount of back pay owed to the employee.” Though

our case law indicates that the purpose of allowing reinstatement and back pay “is to make the

wrongfully discharged employee whole,” it is also “not [meant] to provide a windfall.” Schulze,

17 S.W.3d at 591 (quoting Wolf, 517 S.W.2d at 144). The AHC simply cannot award Gan

compensation for something he did not have before termination. Regardless of how the amount

he is seeking compares to the amount of the State’s contribution, if the coverage and benefits he

had during separation were greater than what he had during employment, the State is not obligated

to pay for that. While we recognize that the coverage may have been equivalent or possibly even

lesser, it was Gan’s burden to present evidence to support his claim,8 and he failed to do so.

Therefore, the AHC did not err in refusing to include these amounts in its back-pay award. Point I

is denied.

 8
 See e.g., Gunter v. Bemis Co., Inc., 906 F.3d 484, 493 (6th Cir. 2018) (rejecting claimed error in calculation
of back-pay award for lost medical insurance benefits where claimant failed to offer any evidence of cost of lost
benefits despite his burden to prove “his actual expenses with reasonable certainty”).

 11
 II. Neither pre- nor post-judgment interest is authorized for a back-pay award under
 § 621.075.

 Gan next argues that the AHC erred in failing to award him pre- and post-judgment interest

on his back-pay award because nothing in § 621.075 precludes it. We disagree. As noted above,

because the AHC is a creature of statute, its authority is limited by the legislature. Similarly, “[a]n

allowance of interest must be based upon either a statute or a contract, express or implied.” In re

Estate of Young, 185 S.W.3d 767, 770 (Mo. App. E.D. 2006). Here, § 621.075 makes no mention

of awarding interest in the authority it grants the AHC upon an order of reinstatement. And we

cannot read authority to award interest into the statute where the statute, itself, provides for none.

See State ex rel. Evans v. Brown Builders Elec. Co., Inc., 254 S.W.3d 31, 37 (Mo. banc 2008)

(noting that “the legislature’s failure to provide for prejudgment interest in the statute authorizing

[relief] indicated the legislature’s intent that interest not be available”); Carpenter v. Countrywide

Home Loans, Inc., 250 S.W.3d 697, 705 (Mo. banc 2008) (“This Court will not read into the statute

an additional recovery of prejudgment interest.”).9 In short, because § 621.075 does not expressly

allow for an award of interest, the AHC did not err in refusing to award either pre- or post-judgment

interest on Gan’s back-pay award. Point II is denied.

 III. The AHC did not err in refusing to include compensation for adverse tax
 consequences in Gan’s back-pay award.

 In his third point, Gan argues that the AHC erred in failing to award him compensation for

the adverse tax consequences associated with receiving a lump-sum payment for his back-pay

award. This claim, however, is conditioned on appeal as it was conditioned below on an award of

the full $239,399.19 in lost wages.10 Because the AHC did not award the full $239,399.19, the

 9
 For examples of statutes expressly authorizing the award of interest, see §§ 191.908.2(3) (providing
whistleblower protection for Medicaid fraud) and 213.111.4(1) (2017) (Missouri Human Rights Act).
 10
 In his brief, Gan argues (in what appears to be copied and pasted from a filing in the circuit court):

 12
condition upon which Gan’s claim was made did not come to fruition. And, because we have not

found error in the AHC’s refusal to award the full $239,399.19, the condition upon which this

claim on appeal is based has, likewise, not come to fruition.

 Therefore, Point III is denied.

 IV. Gan’s claim that the AHC improperly determined that the Department reinstated
 him is without merit.

 In his final point, Gan argues that the AHC erred in determining that Gan was reinstated as

of February 1, 2013, because Gan was, in fact, only rehired in a different position, rather than

being reinstated to his original position. Gan argues that there is a fundamental distinction between

reinstatement and rehiring and that rehiring is mere substitute employment that operates to mitigate

damages. He argues that, if the Department had rehired him sooner, the AHC would have lacked

any basis for determining that Gan failed to mitigate, and he would have received the entirety of

his lost salary instead of only two years’ worth. Gan’s claim fails for several reasons.

 To begin, Gan has failed to establish that he was not reinstated. Reinstatement is defined

as “an action which returns an employee to a class in which the employee held regular status due

to an ordered reinstatement.” 1 C.S.R. § 20-1.020(1)(A)29. Before dismissal, Gan was employed

with the Department as a Research Analyst III; as of January 14, 2019, Gan was again employed

with the Department as a Research Analyst III, with an annual salary equal to what he would have

been making absent the dismissal. Gan makes much of testimony from the Department’s former

Appointing Authority Penny Schrock that drew a distinction between rehiring and reinstating. But

 Should Gan receive a back[-]pay award in excess of $239,000 in 2019, his tax rate would increase to 32%.
 This would increase his tax liability from approximately $28,000 to $117,000 as a result of a lump sum
 payment. Assuming this Court or an Appeals Court overrules the AHC Decision and awards Gan not less
 than $234,280 as back pay, then it should also compensate him an additional $89,000.00 for the increased
 tax liability he will incur as a result of a lump sum payment resulting from Schrock’s unlawful dismissal.
(Internal citation omitted.)

 13
Schrock was merely pointing out that, until the conclusion of the AHC hearing wherein the AHC

determined a reinstatement date, Gan’s reemployment with the Department could be characterized

only as a rehiring because the Department lacked authority to “reinstate” Gan, as that authority

belonged solely to the AHC.

 Second, Gan’s argument attempts to place the burden of mitigating his damages on the

Department, rather than on himself, where the burden properly belongs. He argues that the

Department could have rehired him at any time before January 14, 2019. But, in making this

argument, he ignores the fact that the doctrine of avoidable consequences “requires that one

damaged through the breach by another of some legal duty or obligation must make reasonable

efforts to minimize the resulting damage.” Bedford v. Audrain Cnty. Motor Co., Inc., 631 S.W.3d

663, 674 (Mo. App. E.D. 2021); see also N.L.R.B. v. Brown & Root, Inc., 311 F.2d 447, 452 (8th

Cir. 1963) (noting that an employee wrongfully discharged under the National Labor Relations

Act “must use reasonable diligence to find employment during the period of [separation]. He is

not entitled to back pay for periods during which he voluntarily remained in idleness.”). This

argument further ignores the fact that the Department had the right to appeal the AHC’s

determination that Gan should be reinstated. See § 621.075.3 (noting the AHC is to hold an

evidentiary hearing to determine reinstatement date and amount of back pay only “[a]fter an order

of reinstatement has been issued and all parties have let the time for appeal lapse or have filed an

appeal and that appeal process has become final and the order of reinstatement has been affirmed”).

Had the Department prevailed, it would have been under no obligation to rehire Gan at all.

 Finally, if the Department had rehired Gan sooner, that would not result in him obtaining

all of his lost salary for the entire period of separation. As he noted, any pay he received during

 14
the period of separation would have been deducted from the overall amount, likely resulting in a

similar, if not the same award he already received.

 For all these reasons, Point IV is denied.

 Conclusion

 The AHC did not err in entering its order determining Gan’s reinstatement date of

February 1, 2013, nor in its determination of Gan’s back-pay award. The judgment of the circuit

court affirming the AHC’s decision is affirmed.11

 Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Alok Ahuja, Judge, concur.

 11
 Gan has filed a motion for attorney’s fees with this court. The motion, itself, is unclear as to what fees he
is seeking, but we interpret the motion as requesting attorney’s fees on appeal. In light of our disposition, that motion
is denied.

 15